**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

DANA SCHWARTZ,

     Plaintiff,

   vs.                                  No.  1:18-cv-00328-WJ-SCY

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.


## MEMORANDUM OPINION AND ORDER
## DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO
## DISMISS and DENYING DEFENDANT'S MOTION TO CERTIFY

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss Plaintiff's

Amended Complaint, filed May 14, 2018 **(Doc. 9),** and Defendant's Motion to Certify Questions

to the New Mexico Supreme Court, filed May 14, 2018 **(Doc. 7)**.  Having reviewed the parties'

pleadings and the applicable law, the Court finds that Defendant's Motion to Dismiss is not well-

taken and, therefore, is **DENIED IN PART.**  However, the Court will dismiss certain counts as

specified below, with leave to amend.  Finally, the Motion to Certify is **DENIED WITHOUT**

**PREJUDICE** as premature.

### BACKGROUND

This class action arises out of a dispute over "underinsured motorist coverage." NMSA §

66-5-301 ("'underinsured motorist' means an operator of a motor vehicle with respect to the

ownership, maintenance or use of which the sum of the limits of liability under all bodily injury

liability insurance applicable at the time of the accident is less than the limits of liability under

the insured's uninsured motorist coverage.").  Plaintiff alleges that Defendant misrepresented or

failed to adequately explain to her and similarly situated class members the extent of "underinsured motorist" coverage when purchased at the minimum level of $25,000.

Plaintiff was the victim of a car crash on December 11, 2012.[1]  While Plaintiff was stopped at a red light on Academy Blvd. in Albuquerque, New Mexico, the tortfeasor attempted to slip between her and another stopped car, crashing into both.   She received $25,000 in compensation from the tortfeasor's minimum liability policy. Because she alleges her damages were in excess of $25,000, she apparently sought benefits from her own uninsured and underinsured motorist coverage from her insurance company, Defendant State Farm.  Her policy with Defendant included statutory minimum amount of uninsured and underinsured of $25,000. Defendant allegedly denied coverage according to the insurance policy and New Mexico law, because the amount received from tortfeasor's minimum liability insurance was offset against Plaintiff's $25,000 uninsured and underinsured policy.  *See generally Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (N.M. 1985) (explaining statutory offset in NMSA § 66-5-301).  Defendant State Farm claims to have paid under the underinsured motorist provisions for property damage, but Plaintiff alleged that Defendant denied underinsured motorist coverage for bodily harm.

Plaintiff generally alleges that Defendant misrepresented and misled the nature of underinsured motorist coverage she purchased, causing her to reasonably expect that the purchased coverage would compensate her for damages that were greater than the limits of the tortfeasor's liability limits.  **Doc. 1-02, ¶ 24, 30, 33, 40**. Plaintiff claims that Defendant did not inform her of the limited nature of underinsured motorist coverage when purchased at the minimum level.  Based on this allegation, Plaintiff filed a complaint asserting the following claims:

---

[1] The Court takes the following factual allegations as true.

| Count I: | Negligence; |
| Count II: | Violations of the Unfair Trade Practices Act; |
| Count III: | Violations of the Unfair Insurance Practices Act; |
| Count IV: | Breach of Contract and Claim for Motorist Coverage; |
| Count V: | Breach of Contract and Covenant of Good Faith and Fair Dealing; |
| Count VI: | Injunctive Relief; |
| Count VII: | Declaratory Judgment; and |
| Count VIII: | Punitive Damages. |

Defendant seeks to dismiss all claims for lack of standing under Fed. R. Civ. P. 12(b)(1), or alternatively, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

## I.    Motion to Dismiss for Lack of Standing under Fed. R. Civ. P. 12(b)(1).

Defendant argues that this case should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction, because Plaintiff lacks standing.  Plaintiff "must demonstrate standing to sue by establishing (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Philadelphia Indem. Ins. Co. v. Lexington Ins. Co.*, 845 F.3d 1330, 1335 (10th Cir. 2017) (internal citations and quotation marks omitted).  Here, Defendant solely argues that Plaintiff has not demonstrated an injury in fact.

"Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), citing *Holt v. United States,* 46 F.3d 1000, 1002–03 (10th Cir.1995) (citation omitted).  When considering evidence outside the pleadings under Fed. R. Civ. P. 12(b), the Court need not convert the motion to Rule 56, unless the standing issue is intertwined with the merits of the Plaintiff's case.  *Holt*, 46 F.3d at 1003.

Defendant's sole argument in the motion is that Plaintiff failed to plead any facts that she was actually harmed. Defendant points out that it in fact paid Defendant $3,225 under the underinsured motorist coverage, and therefore Plaintiff has no standing to assert a denial of underinsured coverage. However, this payment was apparently solely for property damage. **Doc. 1-4, ¶ 4-5.** Defendant's argument does not tend to facially attack Plaintiff's complaint, because she alleges that she sustained *bodily injuries* in an accident in which she was not at fault and for which she was not compensated under her underinsured motorist coverage. **First Amended Complaint ("FAC) ¶ 10**. Plaintiff alleges that Defendant denied coverage under her underinsured motorist coverage. **FAC ¶ 30, 32.** Based on these allegations, Plaintiff has adequately pled an injury in fact.

Alternatively, Defendant could be interpreted to attack the facts upon which Plaintiff's standing rests.[2] In response, Plaintiff filed a declaration stating she incurred bodily injury in excess of the tortfeasor's liability policy, and Defendant preemptively denied coverage under her underinsured motorist coverage. **Doc. 24-1, ¶ 8** ("State Farm denied my request for uninsured/underinsured motorist coverage on November 5, 2015, stating "there is not underinsured motorist exposure form [sic] the motor vehicle accident."). She also attached a letter from Defendant that states that Defendant concluded that because the tortfeasor's liability limits were $25,000, she had no underinsured motorist coverage, and that they would therefore close the case. Plaintiff has shown that Defendant denied coverage under the underinsured motorist provision.

Moreover, it appears that Defendant's standing arguments may be tied together with the merits of the case. To the extent Defendant argues that Plaintiff suffered no harm because coverage was not illusory and there was no misrepresentation, that goes to the merits of the case,

---

[2] The Court will not address standing arguments raised for the first time in Defendant's reply brief.

and is best addressed under Fed. R. Civ. P. 56. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) ("Consequently, unless the jurisdictional issue is intertwined with the merits of Plaintiff's case, the district court properly considered evidence outside of the pleadings and resolved factual disputes without converting the motion into a Rule 56 motion").

II.     **Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6).**

A.      **Legal Standard under Fed. R. Civ. P. 12(b)(6)**.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Conclusory allegations of liability, without supporting factual content, are insufficient. "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Because this is a diversity case based on New Mexico law, this Court must ascertain and apply New Mexico law. In doing so, the Court must either follow the decisions of the New Mexico Supreme Court, or attempt to predict what the New Mexico Supreme Court would do. *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

Although not attached to the complaint or the motion to dismiss, the Court may consider the insurance policy as it is referred to in the complaint, it is central to the Plaintiff's claims and the parties do not dispute its authenticity. *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002), *cited in Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). Therefore, the Court may consider the policy and need not convert to Fed. R. Civ. P. 56.

## B. New Mexico Statutory Offset Procedure for Underinsured Motorist Coverage.

NMSA § 66–5–301(A) mandates that every motor vehicle policy include uninsured and underinsured motorist coverage for bodily injury or death and property damage. This statute is "intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 5, 149 N.M. 157, 159, 245 P.3d 1209, 1211, *quoting Romero v. Dairyland Ins. Co.,* 111 N.M. 154, 156, 803 P.2d 243, 245 (1990). Motor vehicle policies must contain bodily injury limits at a minimum level of $25,000 per person and $50,000 per accident. NMSA § 66–5–215(A)(2)–(3). Uninsured and underinsured motorist coverage has the same minimum level, and may be bought at an amount up to the liability amount in the policy. Insureds have the option of rejecting uninsured and underinsured motorist coverage. NMSA § 66-5-301(C). Underinsured motorist coverage is defined as follows:

> The uninsured motorist coverage described in Subsection A ... *shall include* underinsured motorist coverage for persons protected by an insured's policy.... "[U]nderinsured motorist" means an operator of a motor vehicle ... which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage.

NMSA § 66-5-301(B) (emphasis added). "The state of being underinsured exists when the aggregate of the insured's uninsured motorist coverage reduced by the tortfeasor's liability coverage is greater than zero." *Schmick v. State Far Mutual Automobile Insurance Co.*, 103 N.M. 216, 223 (N.M. 1985). Thus, according to the New Mexico Supreme Court, underinsured motorist coverage does not exist where the tortfeasor carries the minimum liability amount of $25,000, and the insured has the same amount of uninsured motorist coverage. *Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 161, 245 P.3d 1209, 1213 ("An insured carries UIM coverage only if the UM/UIM limits on her or his policy are greater than the statutory minimum of $25,000."). Based on that reasoning, the New Mexico Supreme Court required insurers to offer underinsured motorist insurance in an amount greater than $25,000, reasoning that an offer of underinsured motorist coverage at the minimum level is no offer at all. *Id.*

**C.      Plaintiff States a Claim for Negligent Misrepresentation.**

Defendant argues that Plaintiff failed to state a claim as to the negligence count, because (1) she failed to allege sufficient facts to support a negligence claim, and (2) as a matter of law a negligence claim may not arise where there is contractual relationship between an insurer and insured. *See Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 102 N.M. 28, 30 (N.M. 1984) (affirming dismissal of negligent failure to settle claim). The Court disagrees.

Initially, the Court notes that Plaintiff does not plead a mere negligence claim, but a negligent misrepresentation claim. To state a negligent misrepresentation claim, Plaintiff must show that "the offending party must have breached a duty of disclosure owed to the injured party, the injured party must have had a right to rely on the misinformation, and it must have sustained damages." *Ruiz v. Garcia*, 1993-NMSC-009, ¶ 26, 115 N.M. 269, 274–75, 850 P.2d

972, 977–78; *See also* Robey v. Parnell, 2017-NMCA-038, ¶ 31, 392 P.3d 642, 652 (negligent misrepresentation claim in New Mexico requires as follows: "(1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff.").

Under New Mexico law, a negligent misrepresentation claim may sound between parties to a contract, or between an insurer and insured, in some circumstances. *See R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 1988-NMCA-111, ¶ 17, 108 N.M. 84, 89, 766 P.2d 928, 933 (duty to disclose for negligent misrepresentation claim may arise in some contracts and in insurance relationship), *citing Macon County Livestock Mkt., Inc. v. Kentucky State Bank, Inc.,* 724 S.W.2d at 349; *Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, ¶ 10, 117 N.M. 82, 86, 868 P.2d 1307, 1311 (negligent misrepresentation claim sounded between insurer and insured); *see also Keller v. A.O. Smith Harvestore Products, Inc.,* 819 P.2d 69 (Colo. 1991) (Under Colorado law, *"It is … clear that a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim...."),* *cited in Colorado Visionary Acad. v. Medtronic, Inc.,* 397 F.3d 867, 871 (10th Cir. 2005) (interpreting Colorado law); *see also Maxey v. Quintana*, 1972-NMCA-069, ¶ 17, 84 N.M. 38, 42, 499 P.2d 356, 360 (determining that negligent misrepresentation is a claim under New Mexico law, under circumstances where there appeared to be contractual relationship). In many cases where a negligent misrepresentation is asserted, the parties are likely parties to a contract. *See* Restatement (Second) of Torts § 552(g) (1977) (person may elect to sue either under negligent misrepresentation claim or under contract); *see also* Restatement (Second) of Torts § 552(1) ("One who, in the course of his business, profession or employment, or in any

other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."), *quoted in Barrington Reinsurance Ltd. v. Fid. Natl. Title Ins. Co.*, 2007-NMCA-147, ¶ 17, 143 N.M. 31, 35, 172 P.3d 168, 172 (negligent representation claim sounded even where negligence claim failed).

Moreover, when considering the portions of the complaint incorporated by reference, Plaintiff adequately pled sufficient facts to assert a plausible negligent misrepresentation claim. Plaintiff alleges that Defendant misrepresented to her that she would benefit from the underinsured coverage when they should have known that the coverage was meaningless. In other words, Plaintiff argues that Defendant failed to inform her that the coverage she was purchasing would provide little to no coverage. Plaintiff has also adequately pled that a duty to disclose arose between Defendant and Plaintiff, which is dependent on the facts and circumstances of each case. *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 61, 133 N.M. 669, 688, 68 P.3d 909, 928 (in citing restatement 551, noting that "courts typically consider a number of factors, including the relationship between the parties, the relative knowledge of the parties, the reasonable expectations of the plaintiff, the practices or customs of the trade, and other relevant circumstances, in determining whether there is a duty to disclose material facts."); *see also Delgado v. Costello*, 1978-NMCA-058, ¶ 11, 91 N.M. 732, 735, 580 P.2d 500, 503 (duty to disclose under negligent misrepresentation must be determined on circumstances of the case). Therefore, the Court concludes that Plaintiff states a plausible claim for relief.

   **D.**     **Unfair Practices Act ("UPA"), NMSA § 57-12-1** *et seq.*

1. <u>State Farm is not exempt from the misrepresentation and disclosure claims under the UPA</u>.  Defendant argues that actions "expressly permitted" by law administered by a regulatory body of New Mexico are exempt from the UPA.

NMSA § 57–12–7 provides:

> Nothing in the Unfair Practices Act shall apply to actions or transactions expressly permitted under the laws administered by a regulatory body of New Mexico or the United States, but all actions or transactions forbidden by the regulatory body, and about which the regulatory body remains silent, are subject to the Unfair Practices Act.

Defendant argues that the offset provision in the policy is "expressly permitted" under NMSA § 66-5-301, and therefore any challenge to the validity of the offset provision is prohibited. *See Coll v. First American Title Insurance Company*, 642 F.3d 876, 900.  Defendant misinterprets the complaint.  Plaintiff generally is not objecting to the offset provision, but to misrepresentations or failure to disclose that the coverage at the minimum level was generally worthless.

Defendant has not pointed to anything from a regulatory body that expressly permits them to, as Plaintiff alleges, misrepresent the nature of the coverage or fail to disclose material information. *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 58, 147 N.M. 583, 597, 227 P.3d 73, 87, *citing Azar,* 2003–NMCA–062, ¶ 68, 133 N.M. 669, 68 P.3d 909 ("[T]he specific activity, *including the manner in which it was done,* must be expressly permitted to fall within [the] exemption.").

The purpose of this exemption is to give deference to a regulatory body.  *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 32, 147 N.M. 583, 592, 227 P.3d 73, 82.  Here, Defendant has pointed to nothing that has been "expressly permitted" by a regulatory body.

2. <u>Plaintiff states a claim for relief under NMSA § 57-12-2(D)</u>.  Defendant argues that Plaintiff failed to plausibly state a claim for relief under NMSA § 57-12-2(D),

because she failed to adequately plead that Defendant provided insufficient information regarding her underinsured motorist coverage. "To state a claim under the UPA, a plaintiff must show that: (1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007), citing *Brooks v. Norwest Corp.,* 136 N.M. 599, 611, 103 P.3d 39 (2004); *see also Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 101, 753 P.2d 346, 347 (1988). Defendant appears to argue that Plaintiff did not sufficiently plead facts that showed that Defendant failed to provide sufficient information regarding her underinsured motorist coverage. *See* NMSA § 57-12-2(D).

Plaintiff alleges that Defendant, in selling her insurance, misrepresented the nature of underinsured motorist coverage. She alleges she was told that underinsured motorist coverage is mandatory, when it is not. She states that she was led to believe that she would receive a benefit from the underinsured motorist coverage when purchased at the minimum level. She alleges she was told she would benefit from underinsured motorist coverage at the minimum level, when in fact Defendant knew or should have known that such coverage provided little to no value. In other words, Defendant allowed her to pay a premium for minimum level underinsured motorist coverage, when she could have either rejected such coverage, or opted for higher coverage. These facts are sufficient to state a plausible claim for relief under the UPA.

Defendant argues that the offset provision is in the policy and provides sufficient information to the insured. However, reading the offset provision in the policy would not inform

an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value.

"The UPA ... imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading." *Smoot v. Physicians Life Ins. Co.,* 2004–NMCA–027, ¶ 15, 87 P.3d 545, 549 (N.M.Ct.App.2004), *quoted in Vilar v. Equifax Info. Servs., LLC*, 2014 WL 7474082, at *27 (D.N.M., 2014). "New Mexico courts have held that information is material where: (i) the plaintiff has no reasonable opportunity to ascertain it; and (ii) whether it would have induced a reasonable consumer in the plaintiff's shoes to enter into that contract." Even when considering the policy, Plaintiff states a plausible claim for relief under the UPA. The policy does not spell out that the underinsured motorist provision is effectively non-existent, under circumstances where both the tortfeasor and insured have minimum liability limits. *See Romero v. Dairyland Ins. Co.*, 1990-NMSC-111, ¶ 17, 111 N.M. 154, 159, 803 P.2d 243, 248 ("Given the realities of the automobile liability insurance business in which the unfamiliar terminology of a policy describes coverage under complex rights and obligations of personal injury and liability law, given an insured who is unsophisticated in business affairs, and given the public policy favoring insurance coverage for personal injury and liability arising from the operation of motor vehicles, we question whether …the duty to read one's insurance policy can have very general application. The exception is the more appropriate rule as this Court has stated in the past.").

        3.    <u>Plaintiff stated a claim under NMSA § 57-12-2(E)</u>. Defendant argues that Plaintiff failed to state a claim under § 57-12-2(E), because she only included threadbare, conclusory allegations. An unconscionable trade practice is defined as:

> an act or practice in connection with the sale, lease, rental or loan, or in
> connection with the offering for sale, lease, rental or loan, of any goods or

services, including services provided by licensed professionals, or in the extension
of credit or in the collection of debts that to a person's detriment:
(1) takes advantage of the lack of knowledge, ability, experience or capacity of a
person to a grossly unfair degree; or
(2) results in a gross disparity between the value received by a person and the
price paid.

NMSA. § 57-12-2(E).   In other words, to state a claim that Defendant violated § 57–12–2(E),

Plaintiff must allege: (1) Plaintiff "lacked knowledge, ability, experience, or capacity in credit

consumption;" (2) "Defendants took advantage of [Plaintiff's] deficits in those areas; and" (3)

"these practices took advantage of [Plaintiff] to a grossly unfair degree to [Plaintiff's]

detriment." *Tweed v. CitiMortgage, Inc.*, 2017 WL 7510687, at \*4 (D.N.M. Apr. 24, 2017). "We

consider whether borrowers were taken advantage of to a grossly unfair degree by looking at

practices in the aggregate, *as well as the borrowers' characteristics*." *State ex rel. King v. B & B

Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 25, 329 P.3d 658, 668 (emphasis added), *citing Portales

Nat'l Bank v. Ribble,* 2003–NMCA–093, ¶ 15, 134 N.M. 238, 75 P.3d 838.   Defendant argues

that Plaintiff failed to adequately plead that Defendant took advantage of her knowledge, ability,

or capacity to a grossly unfair degree.

Here, Plaintiff alleges that Defendant solicited a premium for coverage it knew was

worthless, and knew that she had no knowledge that such coverage was worthless.  **FAC, 27, 77**.

She alleged that Defendant told her she would benefit from underinsured motorist provision,

when in fact it is worthless.  She also alleged that Defendant misrepresented to her that she was

required to have underinsured motorist coverage.  As explained above, although the policy set

forth the offset provision, it is not apparent from reading the offset provision that the specific

coverage she purchased would be worthless.  *See* NMSA § 66-5-301(C) (allowing insured to

reject uninsured motorist coverage).  Misrepresenting to an insured that she was required to

purchase certain coverage and that it would provide a benefit, taking advantage of her lack of

knowledge, states a plausible claim that Defendant took advantage of her to a grossly unfair degree.

### E. <u>Unfair Insurance Practices Act ("UIPA") NMSA § 59A-16-1 (Count III)</u>.

Plaintiff alleges that Defendant violated the New Mexico Unfair Insurance Practices Act. New Mexico's Unfair Insurance Practices Act ("UIPA"), NMSA 1978, §§ 59A–16–1 to 59A–16–30 (2009), seeks to prohibit unfair or deceptive acts and practices in the insurance industry." *Brule v. Blue Cross & Blue Shield of New Mexico*, 455 F. App'x 836, 840 (10th Cir. 2011). Insurance companies "have a duty to disclose material facts about the policies they sell under the UIPA." *Id.*, citing *Azar v. Prudential Ins. Co. of Am.,* 133 N.M. 669, 68 P.3d 909, 930 (2003). Additionally, New Mexico has long recognized that "both the insurer and the insured have a duty not to misrepresent or withhold information material to an insurance contract." *Id., quoting Azar*, 68 P.3d at 930. "Thus, New Mexico law strongly encourages open and transparent dealings in the insurance context, particularly with regard to material information." *Brule*, 455 F. App'x at 840; *see, e.g.*, *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶¶ 15–16, 135 N.M. 265, 87 P.3d 545 (concluding that "[t]he UPA and the UIPA each imposes a duty to disclose material facts reasonably necessary to prevent any statements from being misleading" and noting the existence of "a common law duty to disclose the allegedly material facts").

Plaintiff alleges that Defendant violated the UIPA by:

- misrepresenting to its insured pertinent facts or policy provisions in violation of § 59A-16-20(A);
- failing to acknowledge and act reasonable and promptly upon communications with respect to claims from its insureds arising under the policy in violation of § 59A-16-20(b);
- failing to adopt and implement reasonable standard for prompt investigation and processing of its insured's claims arising under the policy in violation of § 59A-16-20(C);
- failing to properly affirm and pay the coverage for claims of its insured within a reasonable period of time after proof of loss requirements under policy as completed and submitted, in violation of § 59A-16-20(D)

- failing to attempt in good faith to effectuate a prompt, fair and equitable settlenmet of Plaintiff's claims in which liability has become reasonably clear, in violation of 59A-16-20(E).

Defendant seeks dismissal of all the above claims for failing to plead any facts supporting them. As explained above, Plaintiff has pled detailed facts regarding misrepresentation or nondisclosure, and pled a plausible claim of misrepresentation, pursuant to § 59A-16-20(A). As to sections (B)-(D), the Court concludes that Plaintiff merely pled a threadbare recital of the elements of the cause action, and did plead any facts in support thereof. Therefore, the Court will dismiss those claims, but grants Plaintiff leave to amend.

The Court agrees, however, that Plaintiff failed to state a claim as a matter of law as to Defendant as to NMSA § 59A-16-20(E). Defendant followed the offset provision in both the policy and in NMSA §66-5-301 in denying coverage. Therefore, Defendant in good faith believed that it did not have to pay anything under the underinsured motorist provision, based on the offset provision. *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1148 (D.N.M. 2010), *citing Hovet v. Allstate Ins. Co., 2004-NMSC-010*, 29, 135 N.M. 397, 406 ("We also emphasize that the Insurance Code does not impose a duty to settle in all instances, nor does it require insurers to settle cases they reasonably believe to be without merit or overvalued.").

**F.    Plaintiff fails states a claim for breach of contract (Count IV).**

Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Abreu v. N.M. Children, Youth and Families Dep't,* 797 F.Supp.2d 1199, 1247 (D.N.M. 2011), *citing Camino Real Mobile Home Park P'ship v. Wolfe,* 119 N.M. 436, 442, 891 P.2d 1190, 1196 (1995).

Count IV as currently pled does not allege a breach. Plaintiff has not pointed to any contract term Defendant has breached. Because of the threadbare pleading, it is unclear how

insurer is not complying with the policy, or what term has been breached. *See Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Without any guidance from Plaintiff, the contract appears to be unambiguous and there does not appear to be a breach.

Rather than seeking a remedy for a breach, it appears that Plaintiff seeks to somehow get around the offset provision, so that Defendant is forced to pay the full $25,000 underinsured motorist coverage. Rather than breach of contract, these allegations appear to implicate other contract-law based theories, such as an illusory coverage claim or reformation. If that is so, Plaintiff is required to plead as much.

Based on uncertainty with respect to plaintiff's contract-claim theory and remedy, the Court will require Plaintiff to amend her contract claim. It does not appear amendment would be futile, so the Court grants Plaintiff leave to amend. *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) ("where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."). If Plaintiff continues to pursue a breach theory, Plaintiff must identify the particular provision that Defendant is alleged to have violated.

Until Plaintiff has clarified the claim asserted and proposed remedy, it is premature to rule on the illusory coverage claim, which may not be at issue in this case.[3]

---

[3] In a background section, Defendant appears to assert that all claims in this case should be dismissed, because the claims are based on the false premise that underinsured motorist coverage is illusory. Notably, Defendant did not explain why any particular claim should be dismissed or which claim is based on this allegedly false premise.

### G. __Plaintiff fails to state a claim for violation of the covenant of Good Faith and Fair Dealing (Count V)__.

"[E]very contract in New Mexico imposes the duty of good faith and fair dealing upon the parties in the performance and enforcement of the contract." *WXI/Z Sw. Malls v. Mueller*, 137 N.M. 343, 350 (Ct. App.) (citation omitted), *cert. denied*, 137 N.M. 454 (2005). "[U]nder the contract of insurance, there is an implied covenant of fair dealing which creates an obligation between the parties to act in good faith. New Mexico recognizes this duty of good faith between insurer and insured." *Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 1984-NMSC-107, ¶ 11, 102 N.M. 28, 30, 690 P.2d 1022, 1024 (internal citation omitted); *see also Salas v. Mountain States Mut. Cas. Co.*, 145 N.M. 542, 546 (2009) ("[W]ith insurance contracts, as with every contract, there is an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract.") (citation omitted). "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Watson Truck & Supply Co., Inc. v. Males,* 1990-NMSC-105, ¶ 12, 111 N.M. 57, 801 P.2d 639.

---

Defendant appears to interpret the complaint as asserting that an offset provision in the policy renders the underinsured motorist coverage illusory or providing no benefit, and therefore that exclusionary provision is unenforceable. *See, e.g., The Employers' Fire Ins. Company v. Berg*, 2007 WL 273559 at * 4 ("Illusory coverage means that the policy, when read as a whole provides no coverage at all. Only where there is no possibility under any set of facts for coverage is the policy deemed illusory.")(citation omitted); *Thomas Engineering Co. v. Twin City Fire Ins. Co.*, 2010 WL 49791006 at *6-7 (D. Minn. 2010) (the fact that an insured's circumstance is outside a policy's realm of coverage does not, without more, render the policy illusory; the doctrine of illusory coverage is best or only applied where a part of the premium is specifically allocated to a type or period of coverage that turns out to be functionally non-existent), *quoted in Express Servs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2012 WL 12865257, at *5 (W.D. Okla. 2012).

Defendant cites to three cases outside New Mexico which hold that underinsured motorist coverage issued at mandatory minimum levels is not "illusory." *Ile ex rel. Ile, v. Foremost*, 823 N.W.2d 426, 427 (Mich. 2012); *Friesz ex rel. Friesz v. Farm & City Insurance Company,* 619 N.W.2d 677 (S.D. 2000); *Fagundes v. American International Adjustment Company*, 2 Cal. App. 4th 1310, 1313 (4th Dist. 1992). Those cases dealt with claims that the underinsured motorist policy was an illusory term in a contract, and therefore the offset provisions were unenforceable.

However, the Court cannot rule on Defendant's argument at this time, because it is unclear whether Plaintiff asserts any such claim. Under Counts I-III, Plaintiff appears to merely assert a misrepresentation or nondisclosure claim. It is unclear whether Plaintiff has asserted an illusory coverage claim under Count IV or V.

Claims for breach of good faith and fair dealing between an insured and insurer may sound in either contract or tort. Moreover, the tort recovery breach of the covenant of good faith and fair dealing is available where a special relationship exists, such as between insurer and insured. *Bourgeous*, 117 N.M. at 439, 872 P.2d at 857; *see also Heimann v. Kinder-Morgan CO2 Co.*, 140 N.M. 552, 558, 144 P.3d 111, 117 (Ct. App. 2006) ("The breach of good faith and fair dealing sounds in contract, at least when no "special relationship" such as that between an insured and insurer exists."); *City of Raton v. Arkansas River Power Auth.*, 611 F. Supp. 2d 1190, 1210 (D.N.M. 2008) ("New Mexico and Colorado do not allow a cause of action in tort for breach of the covenant of good faith except in insurance contracts, or possibly contracts that are adhesive in nature.").

This claim suffers from the same insufficiencies as the breach of contract claim. *See, e.g., City of Raton*, 611 F.Supp.2d at 1207 (refusing to dismiss a claim for breach of covenant of good faith and fair dealing that arose out of a well-pleaded breach of contract claim). It appears that Plaintiff bases her bad faith claim on a breach of contractual terms. However, as stated above, it is unclear what term was breached. Merely stating that a breach of contract occurred is not sufficient by itself to allege a breach of contract claim. Moreover, factual insufficiencies make it impossible to determine how Defendant is alleged to have violated the covenant.

Defendant argues that Plaintiff is impermissibly using an alleged breach of the covenant of good faith and fair dealing to override an express contract term. *See Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, ¶ 27, 144 N.M. 449, 456, 188 P.3d 1200, 1207. However, Plaintiff's pleading insufficiency makes it impossible to determine, at this stage, whether Plaintiff is attempting to do so.

Therefore, the Court will dismiss this claim with leave to amend.

**H.** **Affirmative Defenses.**

1. <u>Statute of Limitations</u>. To dismiss claims at this stage on the basis of affirmative defenses, such as the statute of limitations, infirmities must be plain on the face of the complaint. Here, because statute of limitations infirmities are not clear on the face of the complaint, the Court may not rule on statute of limitations issues at this time.

Defendant appears to argue that the statute of limitations may have started running in 1999, when insurance was originally purchased. However, it is unclear when claims were discovered. *McNeill v. Burlington Res. Oil & Gas Co*., 2008-NMSC-022, ¶ 37, 143 N.M. 740, 749, 182 P.3d 121, 130; *Beggs v. City of Portales*, 2013-NMCA-068, ¶ 12, 305 P.3d 75, 79. Moreover, it is unclear when any breach occurred. *Brooks v. State Farm Ins. Co.*, 2007-NMCA-033, ¶ 11, 141 N.M. 322, 325, 154 P.3d 697, 700; *Smith v. Galio,* 95 N.M. 4, 6, 617 P.2d 1325, 1327 (Ct.App.1980) ("In a breach of contract action, the statute of limitations begins to run from the time of the breach."). Therefore, the Court denies this requested relief at this time.

2. <u>Voluntary Payment Doctrine</u>. Defendant argues that the voluntary payment doctrine bars Plaintiff's recovery. *See Rabbit Ear Cattle Co. v. Frieze*, 1969-NMSC-043, ¶ 5, 80 N.M. 203, 453 P.2d 373, 374 ("It is ... a well-established rule that payments voluntarily made with full knowledge of all material facts cannot be recovered back in absence of fraud or duress"), *quoted in Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191, 1238–39 (D.N.M. 2018) (Browning, J.). Plaintiff does not allege that she seeks restitution of premium payments. Moreover, she did not know the material facts relating the underinsured motorist coverage. Therefore, the voluntary payment doctrine does not bar Plaintiff's claims.

3.    <u>Filed Rate Doctrine</u>. Defendant argues that the claims should be dismissed, because the complaint is really a challenge to her underinsured motorist coverage premium. *See Coll*, 642 F.3d at 886-87 ("any filed rate- that is, one approved by the governing regulatory agency – [is] per se reasonable and unassailable in judicial proceedings brought by ratepayers."). The Court disagrees. Plaintiff is not challenging the premium rate, but Defendant's representations and disclosure about the nature of the coverage. *See, e.g., Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191, 1226 (D.N.M. 2018) (Browning, J.) ("The Court concludes that the Supreme Court of New Mexico would not expand its filed rate doctrine to cases where, as here, a consumer alleges that an insurer misrepresents material facts about a policy when making the sale").

## I.    **Injunctive Relief and Punitive Damages.**

Defendant seeks to dismiss Count VI (Injunctive Relief) and Count VIII (Punitive Damages). The Court agrees that punitive damages is a remedy, and not an independent cause of action, but the Court will allow punitive damages to the extent it can be tied to other causes of action. *See, e.g., President & Fellows of Harvard Coll. v. Elmore*, 222 F. Supp. 3d 1050, 1066 (D.N.M. 2016) (Brack, J.). Punitive damages are potentially allowable under multiple claims in this action, including the UPA, certain contract claims, and bad faith. *Id.*

Plaintiff pled a claim for injunctive relief, but did not indicate the factual basis of the injunctive relief, or which claims she seeks injunctive relief under. Injunctive relief may be available under the UPA. NMSA § 57-12-10(A); *Valdez v. Metro. Prop. & Cas. Ins. Co*., 2012 WL 1132414, at *26 (D.N.M., 2012) (Browning, J.). The UPA authorizes injunctions on principles of equity. NMSA § 57-12-10(A). Under equity, a Plaintiff seeking an injunction must show irreparable harm for which there is no adequate and complete remedy at law. *State ex rel.*

*State Highway & Transp. Dep't of N.M. v. City of Sunland Park*, 2000-NMCA-044, ¶ 19, 129 N.M. 151, 157, 3 P.3d 128, 134, *cited in Valdez,* 2012 WL 1132414, at *27. Plaintiff has not pled facts alleging that she and class members suffered irreparable harm. It is also unclear whether Plaintiff seeks an injunction under the UIPA. Therefore, the Court will dismiss the injunctive relief claim with leave to amend.

**III.** **Motion to Certify.**

In the event the Court denies Defendant's Motion to dismiss, Defendant seeks to certify the following questions to the New Mexico Supreme Court:

> 1. Whether uninsured and underinsured motorist coverage sold in New Mexico at state-minimum coverage levels of $25,000 per person and $50,000 per accident is "illusory" or otherwise amounts to an unfair or deceptive practice.
> 2. Whether an insurer is obligated to inform an insured of the offset procedure required by New Mexico law, and if so, is such obligation satisfied by outlining the offset procedure in the policy.

**Doc. 8, p. 14.** A question may be certified to a state supreme court where the question "(1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007). Federal courts "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Id.*

The main certifiable question is whether underinsured motorist coverage at the minimum level is illusory. However, until Plaintiff clarifies whether she asserts that claim, certification is premature. It appears that other cases in this district may be certified based on similar issues. Therefore, if Plaintiff amends those claims, the Court may consider upon motion by a party whether to certify this case or stay it, in interest of judicial economy.

## CONCLUSION

The majority of Plaintiff's claims (Counts I, II, and portions of III) state a plausible claim for relief. However, the Court will dismiss Counts IV, V, and VI, because Plaintiff only pled a bare, formulaic recitation of the elements of the claims, with leave to amend. Moreover, the Court dismisses several claims under Count III (NMSA § 59A-16-20(B)-(D)) with leave to amend, and dismisses with prejudice the claim pursuant to § 59A-16-20(E).

**IT IS THEREFORE ORDERED** that Defendant State Farm's Motion to Dismiss (**Doc. 9**) is hereby **GRANTED IN PART AND DENIED IN PART** for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Counts IV, V, and VI, and the parts of Count III specified above, are **DISMISSED** with leave to amend as described below;

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint consistent with this opinion within **sixty (60) days** of entry of this Memorandum Opinion and Order. If Plaintiff fails to do so, the Court may dismiss the Counts IV, V, VI, and portions of Count III with prejudice; and

**IT IS FINALLY ORDERED** that the Motion to Certify (**Doc. 7**) is **DENIED WITHOUT PREJUDICE.**

_____
CHIEF UNITED STATES DISTRICT JUDGE