**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

DANA SCHWARTZ, on behalf of herself and
all other similarly situated,

     Plaintiff,

     v.                                                            No. 1:18-CV-00328-WJ-SCY

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendant.

**SECOND AMENDED CLASS ACTION COMPLAINT FOR BREACH OF
STATUTORY, COMMON LAW, AND CONTRACTUAL DUTIES**

COMES NOW Plaintiff Dana Schwartz, for herself and on behalf of the class defined

herein, by and through her counsel of record, DOMINGUEZ LAW FIRM (Paul M. Dominguez),

and for her causes of action, states as follows:

1.    Defendant State Farm Mutual Automobile Insurance Company ("Defendant")

failed to act honestly and in good faith when it solicited and sold superfluous and illusory

minimal limits underinsured motorist coverage to their insureds (in whole or in part) in violation

of New Mexico law, and/or they denied claims for the benefits of that coverage. Basically, there

is no such thing as "minimum limits underinsured motorist coverage". Nonetheless, Defendant

sold such coverage to Plaintiff Dana Schwartz and other class members.

2.    Defendant made various material misrepresentations and included ambiguous

language about the terms of underinsured coverage, including the illusory coverage above

and an offer to sell uninsured and underinsured coverage in excess of liability coverage.

3.    This conduct violates the New Mexico Unfair Practices Act, N.M.S.A.1978, §

§57–12–1 et seq. ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§

59A–16–1 et seq. ("UIPA"), and New Mexico common law.

4.    Plaintiff brings this action on her own behalf, and on behalf of the many insured around the state who have been deceived by Defendant's practices.

## I.    JURISDICTION AND VENUE

5.    Plaintiff is now and was at all times material to this Complaint a resident of  Bernalillo County.

6.    At all times material, Plaintiff was covered by a policy of automotive insurance issued by Defendant in the State of New Mexico, which provided her with underinsured coverage for injuries and damages described herein.

7.    Defendant is a real party in interest and a proper party to this action.

8.    The acts complained of herein occurred in the State of New Mexico.

9.    Jurisdiction and venue are proper in this Court.

## II.    GENERAL ALLEGATIONS COMMON TO ALL COUNTS OF THIS COMPLAINT[1]

### Ms. Schwartz is Injured in a Car Crash with an Underinsured Motorist

10.    On December 11, 2012, Plaintiff sustained bodily injuries and other damages arising  from an automobile collision that occurred in Albuquerque, New Mexico; Plaintiff was  not at  fault for the crash.

11.    On December 11, 2012, Plaintiff driving one of two vehicles, both in separate lanes, at a red light heading eastbound on Academy Road of the two-lane road.   Mitchell Roberts sped down Academy Road and attempted to squeeze between the two vehicles stopped at the red

---

[1] Except as context may otherwise require, the factual allegations hereof are based on information and belief.

light at speeds in excess of 50 mph, violently striking both cars with his Chevrolet Suburban.

12.     As a result of the impacts, Plaintiff suffered serious bodily injuries and other damages.

13.     At the time of the collision, Plaintiff was abiding by the traffic laws of the State of New Mexico and the City of Albuquerque.

14.     At the time of the occurrence, Plaintiff was insured by Defendant with Policy No. 003627231H.

15.     Mr. Roberts was an underinsured motorist at the time of the collision, pursuant to the terms of the Defendant's insurance policy of which Plaintiff was an insured, and also under New Mexico law.

16.     Plaintiff received the full extent of liability coverage (statutory minimum) carried by Mr. Roberts, $25,000.00 (twenty-five thousand).

17.     Prior to the collision at issue, Plaintiff had properly paid a premium for automobile coverage under the State Farm Mutual Automobile Insurance Company auto insurance policy and had a  reasonable expectation that she carried underinsured motorist coverage of $25,000.00 each  person and $50,000.00 each accident.

18.     At the time of the collision, Plaintiff was under the belief and had a reasonable expectation that she was entitled to underinsured benefits pursuant to the below referenced New Mexico Auto Application and Policy issued by Defendant.

**Defendant Deceptively Solicits and Sells Superfluous and Illusory Underinsured Coverage to Ms. Schwartz**

19.     Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

20.    Defendant has written direct premium automobile insurance, including underinsured motorist coverage, to thousands of New Mexico residents, and across the United States.

21.    Prior to the issuance of the policy in question, the State of New Mexico legislature enacted the Mandatory Financial Responsibility Act ("MFRA"), wherein residents of New Mexico were required to carry, at minimum, a limit of bodily injury automobile insurance coverage of $25,000.00 per person / $50,000.00 per accident for each automobile they owned. NMSA 1978, § 66-5-208 (2018).

22.    Shortly thereafter and prior to the issuance of the policy in question, the State of New Mexico required insurers, including Defendant State Farm to offer underinsured motorist coverage in the amount of $25,000.00 per person / $50,000.00 per accident, and also mandated that insurers include underinsured motorist coverage within the insured's uninsured motorist coverage. NMSA 1978, § 66-5-301(A)-(C) (2018).

23.    At the point of sale, on or about June 30, 1999, Defendant's agent(s) informed Plaintiff that she must be insured for the state mandated minimum automobile bodily injury insurance coverage of $25,000.00 per person and $50,000.00 per accident. Consequently, Plaintiff chose underinsured motorist coverage in the amount of $25,000.00 each person and $50,000.00 per accident.

24.    Defendant accepted a premium payment of $46.40 for both UM/UIM coverage with knowledge of the superfluous and illusory nature of the underinsured motorist coverage.

25.    Defendant failed to inform Plaintiff of the illusory nature of the underinsured motorist coverage that she purchased.

26.    Plaintiff believed she purchased underinsured motorist coverage in the amount of $25,000.00 per person / $50,000.00 per accident.

27.    In a 2010 case entitled *Progressive v. Weed Warrior*, the New Mexico Supreme Court established that underinsured coverage is superfluous when the tortfeasor and the injured driver both carry the statutory minimum of liability and underinsured coverage. *Progressive Nw. Ins. Co. v. Weed Warrior Services*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 161, 245 P.3d 1209, 1213.

28.    The UM/UIM policy issued by Defendant was renewed for the policy period of August 27, 2012 through April 13, 2013 without any material changes.

29.    Defendant accepted a premium payment of $75.17 for UM/UIM coverage with knowledge of the superfluous and illusory nature of the underinsured motorist coverage.

30.    Defendant did not inform Plaintiff that the additional Underinsured Motorist Coverage she continued to purchase is superfluous and illusory under New Mexico law.

31.    Defendant misrepresented to Plaintiff that she would benefit from underinsured coverage when they knew, or should have known, that the coverage was meaningless. Defendants misrepresentations or lack of representations were made, knowingly and willfully, with the intent to deceive and induce Plaintiff in purchasing underinsured coverage.

32.    Based on the information provided by Defendant, Plaintiff agreed to pay a premium for the State of New Mexico mandated minimum automobile bodily injury and uninsured/underinsured motorist coverage.

33.    Plaintiff reasonably expected and was led to believe by Defendant that she purchased underinsured motorist coverage in the amount of $25,000.00 per person / $50,000.00

per accident.

34.     Following the representations and misrepresentations alleged, Defendant issued to  Plaintiff an automobile insurance policy with corresponding  endorsements ("Policy").

35.     In violation of  New  Mexico law, the  Policy  failed to state  that  underinsured coverage is illusory in the event of a covered occurrence, as in this case, involving  a minimally insured driver.

36.     In  violation  of  New  Mexico  law,  Defendant  had  a  duty  to  fully  and reasonably inform  Plaintiff  what the monthly premiums would be for the next available tier of  coverage,  and  failed  to  fully  and  reasonably  inform  Plaintiff  about  the  superfluous  and unnecessary underinsured motorist coverage.  Defendant  breached that duty.

37.     Under New Mexico law, Defendant had a duty to act fairly, honestly, and in good faith when dealing with the Plaintiff. Defendant failed to do so when it failed to fully inform Plaintiff of illusory underinsured  coverage  with a  disproportionate premium/indemnification ratio when compared to the next tier of available coverage and to not materially misrepresent the terms of underinsured coverage. Defendant breached that duty.

38.     Upon  information  and  belief,  Defendant  continues  to  sell  state  mandated minimum automobile bodily injury policies to purchasers.

39.     Upon information and belief, at the point of sale, Defendant's agent(s) informs purchaser that they must be insured for the state mandated  minimum automobile bodily injury insurance  coverage  of  $25,000.00  per  person  and  $50,000.00   per  accident.  Consequently, purchasers  choose  underinsured  motorist  coverage  in  the  amount   of $25,000.00 each person and $50,000.00 per accident.

40.     Upon information and belief, Defendant does not inform purchasers that the additional Underinsured Motorist Coverage they are purchasing is superfluous and illusory under New Mexico law.

41.     Defendant misrepresents to purchasers that they will benefit from underinsured coverage when they knew, or should have known, that the coverage was meaningless. Defendant's misrepresentations or lack of representations are made, knowingly and willfully, with the intent to deceive and induce purchasers into purchasing underinsured coverage.

42.     Upon information and belief, based on the information provided by Defendant, purchasers agree to pay a premium for the State of New Mexico mandated minimum automobile bodily injury and  uninsured/underinsured motorist coverage.

43.     Following the representations and misrepresentations alleged, Defendant issues to  Plaintiff an automobile insurance policy with corresponding  endorsements ("Policy").

44.     In violation of  New  Mexico law, the  Policy  failed to state  that  underinsured coverage is illusory in the event of a covered occurrence, as in this case, involving  a minimally insured driver.[2]

45.     In  violation  of  New  Mexico  law,  Defendant  has  a  duty  to  fully  and reasonably  inform  purchasers   what the monthly premiums would be for the next available tier of coverage, and failed to fully and reasonably inform purchasers about the superfluous and unnecessary underinsured motorist coverage.  Defendant  breached that duty.

46.     Under New Mexico law, Defendant has a duty to act fairly, honestly, and in good faith when dealing with the purchasers. Defendant failed to do so when it failed to fully inform

---

[2] The minimum limit of bodily injury coverage in New Mexico is $25,000.00 per person / $50,000.00 per accident. NMSA 1978, § 66-5-208 (2017).

purchasers of illusory underinsured coverage with a disproportionate premium/indemnification ratio when compared to the next tier of available coverage and to not materially misrepresent the terms of underinsured coverage. Defendant breached that duty.

### Insurance Investigation and Claims

47.     Following the motor vehicle collision, Plaintiff promptly reported the occurrence to Defendant by and through its claims representatives.

48.     State Farm Mutual Automobile Insurance Company opened a claim, assigned claim number 31-14J2-890, and assigned the adjustment of the matter to its adjuster Cindy Wittenbrink.

49.     At Plaintiff's request, Defendant provided a clarification of coverage letter informing Plaintiff that it was not responsible for payment under her underinsured motorist coverage based on the offset proscribed under existing New Mexico law.

50.     Defendant materially misrepresented the terms of underinsured coverage and did not provide clear and unambiguous language regarding the effects of New Mexico's underinsured coverage offset laws to Plaintiff.

51.     The State Farm Mutual Automobile Insurance Company policy insuring Plaintiff shows liability coverage on one vehicle in the amount of $25,000 each person and $50,000 per accident, per vehicle.

52.     The State Farm Mutual Automobile Insurance Company policy insuring Plaintiff shows underinsured coverage on one vehicle in the amount of $25,000 per person and $50,000 per occurrence, per vehicle.

53.     Defendant did not alert Plaintiff, nor make clear to the ordinary and similarly

situated insured, the fact that the New Mexico offset law drastically and materially diminished payment of benefits arising from a covered occurrence under the policy. Specifically, there is virtually no possible underinsured minimum limits claim available to the Plaintiff and other similarly situated members of the class.

54.    Plaintiff had a reasonable expectation that she would benefit from insurance premiums she paid for. In fact, under her policy, there were virtually no underinsured motorist benefits.

55.    Defendant, in violation of the New Mexico Unfair Practices Act, N.M.S.A.1978, § 57–12–1 et seq. ("UPA"); the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 et seq. ("UIPA"), and New Mexico common law, failed to offer their insureds sufficient information and knowledge regarding the superfluous, illusory, and deceptive coverage.

56.    Pursuant to New Mexico law, Defendant failed to inform Plaintiff and other similarly situated insureds about premium costs corresponding to the available levels of coverage and failed to offer their insureds a fair opportunity to reconsider the decision to select a higher amount of underinsured coverage or reject such coverage altogether.

57.    In violation of New Mexico law, Defendant failed to fully inform Plaintiff and other similar situated insureds during the application and policy writing process that a purchase of 25/50 underinsured coverage, when triggered by a crash with a tortfeasor who has 25/50 bodily injury liability limits, as required by New Mexico law, will result in a payment of a premium for which no payment of benefits will occur and therefore violated Plaintiff's and other insured's reasonable expectations of benefiting from underinsured coverage.

58.    Pursuant to New Mexico law, the underinsured application, coverage, and the corresponding policy language must not be so complex such that a reasonable person would be unable to understand its full impact when he or she reads it. *See King v. Travelers Ins. Co.,* 1973- NMSC-013, 84 N.M. 550, 556, 505 P.2d 1226, 1232 and *Romero v. Dairyland Ins. Co.,* 1990-NMSC-111, 111 N.M. 154, 159, 803 P.2d 243, 248.

59.    Because Defendant failed to fully inform Plaintiff of the New Mexico offset law or that New Mexico is a "difference state" during the application and policy underwriting stages, in a manner consistent with the requirements imposed by, the UPA, the UIPA, and New Mexico common law, Defendant should be required to fully compensate Plaintiff for the injuries and/or actual damages she sustained as a result of the December 11, 2012 incident, via the underinsured benefits ($25,000.00) for which she paid a premium, and/or fully compensate Plaintiff for the premium payments made for the superfluous and illusory coverage she made over the life of the policy.

### III.    CLASS ACTION ALLEGATIONS AND REQUEST TO CERTIFY CLASS

60.    Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

61.    Upon information and belief, all underinsured applications and insurance policies issued by the Defendant to New Mexico policyholders are uniform in all respects material to the claims brought herein and differ only in the limits identified in the endorsements included with such policies.

62.    Defendant committed the above-described unfair and/or deceptive practices, omissions of material fact, wrongful failures to provide underinsured coverage (or the full

amount of such coverage to which Plaintiff was entitled under applicable law), wrongful denials

of claims for underinsured benefits, and/or breaches of the implied covenant of good faith and

fair dealing against other Defendant' policyholders or insureds in New Mexico.

63.     This action is properly maintainable as a class action pursuant to Rule 1-

023  NMRA. The Class is defined as follows:

> All persons (and their heirs, executors, administrators, successors, and assigns)
> who, in the prior six years from the date of filing of this complaint, were
> a  policyholder and/or insured, of a Motor Vehicle Policy issued by defendant
> where that policy did not and does not provide underinsured coverage paid
> for by the policyholder, and sold and solicited by the defendant, due to the
> application of an  offset as set forth in NMSA 66-5-301, otherwise known as the
> New Mexico offset  law or being a "difference state".

64.     Excluded from the Class are all present or former officers and/or directors

of  Defendant, the "Referees" for purposes of the Evaluation Appeal process set forth below,

Class  Counsel and their resident relatives, and Defendant's counsel of record and their resident

relatives.

65.     The proposed class definition is precise, objective, and presently ascertainable,

and it is administratively feasible for the Court to easily ascertain whether a particular individual

is a member.

66.     Certification of the Class is desirable and proper because there are predominant

questions of law and fact in this case which are common to all members of the Class. Such

common questions of law and fact include, but are not limited to:

> a.  Whether Defendant's acts and practices constitute a breach of the
>     Defendant's  contractual obligations with respect to their New Mexico
>     policyholders;

b.  Whether Defendant's acts and practices have breached the implied covenant of good faith and fair dealing with respect to the policies issued to New Mexicans;

c.  Whether Defendant's acts and practices violate Article 16 of the New Mexico Insurance Code;

d.  Whether Defendant's acts and practices constitute failure to state a material fact in connection with the sale of the Defendant's insurance policies;

e.  Whether Defendant's acts and practices have deceived or have had a tendency to deceive the Defendant's policyholders;

f.  Whether Defendant's acts and practices have been misleading or deceptive;

g.  The content, interpretation, and legal effect of the Defendant's standard application forms and other standard form documents, in so far as they relate to the acts and practices set forth above;

h.  The remedies available to Plaintiff and to the Defendant's other New Mexico policyholders or insureds, should it be determined that Defendant's acts and practices have violated their duties to New Mexico policyholders or insureds; and

i.  The legal and/or factual applicability of affirmative defenses that may be alleged by Defendant.

67.  Certification of the Class is desirable and proper because Plaintiff's claims are typical of the claims of the members of the Class the Plaintiff seeks to represent. Without limitation, Plaintiff's claims that Defendant' alleged acts and practices are in breach of the

common law and statutory duties alleged above are typical of the claims of the members of the Class.

68.    Certification of the Class is desirable and proper because Plaintiff will fairly and adequately protect the interests of the Class she seeks to represent. There are no conflicts of interest between the Plaintiff and those of other members of the putative Class, and the Plaintiff is cognizant of her duties and responsibilities to the putative Class. Plaintiff's attorneys are qualified, experienced, and able to conduct the proposed class action litigation.

69.    Certification of the Class is desirable and proper because the members of the Class are so numerous that joinder of all members of the Class is impracticable.

70.    This action should proceed as a class action under Rule l-023(B)(1) NMRA because the prosecution of separate actions by the individual members of the Class would create a risk of:

    a.    inconsistent or varying adjudications with respect to individual members or would establish incompatible standards of conduct for them and/or Defendant; or

    b.    adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

71.    This action should also proceed as a class action under Rule 1 -023(B)(2) NMRA, because Defendant have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive relief and corresponding declaratory relief with respect

to  the Class. Plaintiff seeks to establish the rights and obligations of the parties with respect to the  claims at issue in this case and to enjoin Defendant from continuing to engage in those practices  that violate the duties, contractual, and legal obligations owed to Plaintiff and the Class under  New Mexico law.

72.    This action should also proceed as a class action under Rule 1-023(B)(3) NMRA. The  questions of  law  or  fact common to the  members of  the  Class predominate  over  any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

    a.   Common or generalized proof will predominate with respect to the essential elements of the claims at issue.

    b.   The common questions of law or fact that pertain to the Class predominate over any individual questions and any individual issues do not overwhelm the  common ones.

    c.   No member of the Class has a substantial interest in individually controlling the prosecution of a separate action, but, if any such member or members wish to do so, they may exclude themselves from the Class upon the receipt of notice under Rule 1-023(C)(2) NMRA.

    d.   Upon information and belief, there are no pending lawsuits by members of the  Plaintiff Class who may be similarly situated, and which may potentially affect  the matters raised in this action.

    e.   It is desirable to concentrate the litigation of these claims in this forum. The determination of the claims of all members of the Class in a single forum,

and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation as between Defendant and the Defendant' policyholders and insureds within the Class described by Plaintiff herein.

f. The difficulties likely to be encountered in the management of a class action in this litigation are reasonably manageable, especially when weighed against the virtual impossibility of affording adequate relief to the members of the Class through numerous separate actions.

73. Plaintiff seeks to certify a class pursuant to the Class Actions provisions of 1-023 NMRA, under New Mexico law, and based on the facts and allegations set forth herein.

## IV. ALLEGATIONS AND CLAIMS

### COUNT I:
**Negligence**

74. Plaintiff incorporates by reference the preceding paragraphs as if they were fully stated herein.

75. Defendant had a duty to ensure Plaintiff and other members of the class would be offered and obtain the maximum benefit of underinsured coverage and would not be sold illusory or superfluous underinsured coverage.

76. It was reasonably foreseeable that the underinsured coverage sold to the Plaintiff and other members of the class was, in large part, illusory or superfluous and that Defendant materially misrepresented the terms of underinsured coverage.

77. A reasonably prudent insurance company exercising ordinary care would offer and sell underinsured coverage that was not illusory or superfluous and would not materially mispresent the terms of underinsured coverage.

78.     Defendant's actions and inactions, through its agents, employees, or others on its behalf, were negligent in that they breached the standard of care required of an insurance company issuing auto policies in New Mexico.

79.     As a result of Defendant's negligence, Plaintiff and the Class, sustained actual damages for which Defendant is liable. Plaintiffs are entitled to punitive damages for actions of Defendant which were willful, reckless and wanton, and in bad faith.

## <u>COUNT II:</u>
## Violations of the New Mexico Unfair Trade Practices Act

80.     Plaintiff incorporates by reference the preceding paragraphs as if they were fully stated herein.

81.     There was in effect, at all times material, a state statute commonly known as the New Mexico Unfair Trade Practices Act, N.M.S.A.1978, § 57–12–2 to 58–12–10 ("UPA"), including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(15), (D)(l7)  and Section 57-12-2(E), which prohibits a person selling insurance from engaging in unfair or  deceptive trade practices:

> D. "unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Trade Practices Act [Chapter 57, Article 12  NMSA 1978], a false or misleading oral or written statement, visual description  or other representation of any kind knowingly made in connection with the sale,  lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce,  which may, tends to or does deceive or mislead and includes but is not limited  to:

> (7) representing that the goods or services are of a particular standard,  quality or grade or that goods are of a particular style or model if they are  of another;

> (14) using exaggeration, innuendo or ambiguity as to a material fact or  failing to state a material fact if doing so deceives or tends to deceive;

(15) stating that a transaction involves rights, remedies or obligations that  it does not involve;

(17)  failure to deliver the quality or quantity of goods or services contracted for;

E.  "unconscionable trade practice" means an act or practice in connection with the sale, lease, rental or loan, or in connection with the offering for sale, lease, rental or loan, of any goods or services, including services provided by licensed professionals, or in the extension of credit or in the collection of debts which to  a person's detriment:

(1)  takes advantage of the lack of knowledge, ability, experience or capacity of a person to a grossly unfair degree; or

(2) results in a gross disparity between the value received by a person and  the price paid.

82.    Defendant failed to deliver the quality or quantity of services applied for and purchased by Plaintiff and other insured by failing to provide insurance applications and policies containing sufficient information to fully inform a reasonably prudent person charged with the task of purchasing underinsured insurance, to which Plaintiff was under the reasonable belief that such coverage existed, and to pay claims for insurance benefits sold and solicited by Defendant.

83.    Defendant, acting through their agents, adjusters, and employees, as set forth above, knowingly and willfully engaged in unfair trade practices in violation of Section 57-12-3,  including but not limited to those subsections in Section 57-12-2(D)(7), (D)(l4), (D)(I5), (D)(17)  and Section 57-12-2(E).

84.    Defendant's practices as described herein have resulted in actual damages, trebled, to the Plaintiff and the Class in an amount to be proven at trial, plus costs and reasonable attorney fees.

**COUNT III:**

**Violations of the New Mexico Unfair Insurance Practices Act**

85.     Plaintiff re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

86.     There was in effect at all times material a State statute commonly known in the New Mexico Unfair Insurance Practices Act N.M.S.A.1978, §§ 59A–16–1 *et seq.* ("UIPA").

87.     Pursuant to N.M.S.A.1978, §§ 59A–16–30, the UIPA provides a right of action to any person covered by the UIPA who has suffered damages as a result of a violation of that article by an insurer or agent and is granted a right to bring an action in district court to recover actual damages.

88.     Plaintiff was insured under the policy issued and adjusted by the Defendant.

89.     Defendant owed Plaintiff the duties of good faith, fair dealing, and the accompanying fiduciary obligations.

90.     In the sale and provision of insurance, and in the handling of the underinsured motorist claim, Defendant failed to exercise good faith, and failed to give the interests of its insured (the Plaintiff) the same consideration it gave its own interests.

91.     Defendant's failure to pay anything on Plaintiff's underinsured motorist claims was unfounded, unreasonable, and in bad faith.

92.     Defendant misrepresented the terms of the policy sold and provided to Plaintiff and other insureds, and/or failed to disclose material facts reasonably necessary to prevent other statements from being misleading; failed to implement and follow reasonable standards in the sale and provision of insurance; and failed to follow Defendant's own customary practices and procedures.

93.    Defendant's acts and failures to act were in reckless disregard of Plaintiff's and other insureds rights as an insured under the subject policy.

94.    Defendant's acts and practices took advantage of the lack of knowledge and experience of the Plaintiff and other insureds to a grossly unfair degree.

95.    Defendant failed to abide by its statutory duties under the UIPA, and such violations are negligence per se.

96.    Defendant misrepresented to its insured, pertinent facts or policy provisions relating to coverages at issue, in violation of NMSA § 59A-16-20(A).

97.    Defendant's failure to act in good faith and Defendant's violations of the UIPA are  proximate causes of damages sustained by Plaintiff.

98.    Defendant's conduct was in bad faith, malicious, willful, wanton, fraudulent and/or in reckless disregard of Plaintiff's rights.

99.    Plaintiff and other members of the Class are entitled to attorneys' fees and costs pursuant to §59A-16-30. As a direct and proximate result of Defendant' acts, omissions policies, and conduct in violating the UIPA, as set forth above, Plaintiff and other members of the Class have sustained damages, in addition to the damages common to all counts of this Complaint, including but not limited to the actual damages incurred, the cost of prosecution of this lawsuit, attorneys' fees, and interest on the sums owed under the policy. These injuries and damages are ongoing, permanent, and are expected to continue in the future.

## <u>COUNT IV:</u>
### Breach of Contract and Claim for Defendant Motorist Coverage

100.    The Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

101.    By issuing the policy in question to Plaintiff, the Defendant entered into a contract with Plaintiff and entered into the same contractual obligations with each member of the Class the Plaintiff seeks to represent.

102.    By accepting premium payments for underinsured motorist coverage Defendant State Farm tacitly or impliedly agreed to provide a benefit for the premium charged.

103.    By undertaking the acts described above, Defendant has wrongfully and unlawfully breached its agreement to provide a benefit for the premium charged by failing to provide underinsured coverage and/or denying underinsured claims for benefits to Plaintiff and other members of the Class.

104.    Defendant further breached their contractual obligations to Plaintiff and members of the Class by creating ambiguity and uncertainty in the underinsured motorist coverage provisions of the policy by failing to properly identify, explain, and/or clarify the illusory nature and application of the offset provisions in regard to underinsured motorist coverage purchased at the minimum level.

105.    By engaging in the conduct alleged herein, the Defendant breached its contractual obligations to the Plaintiff and to members of the Class.  The ambiguity and uncertainty in regard to the uninsured and underinsured motorist provisions of the policy has resulted in the collection of premiums by Defendant without the obligation to provide a benefit to Plaintiff and members of the Class.

106.    Pursuant to New Mexico law, and because of Defendant' breaches of their contractual obligations to the Plaintiff and to the Class, Plaintiff and other members of the Class

are entitled to actual damages, including but not limited to, underinsured coverage in an amount equal to liability limits and may be entitled to payment of underinsured benefits, or payment of additional underinsured benefits accordingly and to damage to the Plaintiff and the Class in an amount to be proven at trial.

<u>**COUNT V:**</u>
**Breach of Contract and Covenant of Good Faith and Fair Dealing**

107.    Plaintiff re-alleges all previous paragraphs of this Complaint and incorporates the same as though set forth fully herein.

108.    By issuing the policies to Plaintiff and the Class, Defendant entered into a contract with Plaintiff and the Class.

109.    Defendant failed to perform its obligations under that contract.

110.    Implicit in the contract of insurance between the Plaintiff and Defendant was the covenant that Defendant would, at all times, act in good faith and deal honestly and fairly with the Plaintiff entitled to compensation for damages under her policy.

111.    Defendant breached the implied covenant of good faith and fair dealing, in one or more of the following ways, including but not limited to:

  a.  Failing to meet the reasonable expectations of the insured, including Plaintiff and members of the Class, in regard to the performance of the underinsured motorist provisions of the policy;

  b.  Failing to properly inform Plaintiff and members of the Class of the illusory coverage it solicited and sold;

  c.  Charging a premium for coverage that was not provided;

  d.  Failing and refusing to acknowledge that the subject occurrence triggers the

subject insurance policy;

e.  Failing and refusing to disclose, admit and acknowledge coverage in this matter;

f.  Failing and refusing to promptly and fairly investigate, process, determine and decide Plaintiff's claims under the policy referenced above;

g.  Denying coverage to its insured, the Plaintiff, under the policy;

h.  Failing and refusing to cover its insured, the Plaintiff, under the underinsured motorist portion of the policy referenced above; and

i.  Failing and refusing to mediate, resolve, and settle the Plaintiff's underinsured motorist claims.

112.  As a direct and proximate result Defendant's acts and omissions alleged herein, the Plaintiff has suffered damages in an amount to be proven at trial.

113.  Defendant's acts and omissions alleged herein and breach in the implied covenant of good faith and fair dealings were done intentionally, willfully, wantonly, grossly, maliciously and/or with reckless disregard for the rights of the Plaintiff. Accordingly, the Plaintiff and the Class are entitled to recover punitive damages in an amount to be determined by the jury and sufficient to punish the Defendant for its misconduct and to deter others from similar conduct in the future.

## COUNT VI:
### Injunctive Relief

114.  Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

115.  Plaintiff and the Class are entitled to injunctive relief requiring that Defendant be enjoined from continuing practices that violate the duties, contractual, and legal obligations owed

to Plaintiff and the Class.

116.   Plaintiff and members of the Class as identified within this Complaint are likely to suffer harm as a direct and proximate result of Defendant's misrepresentations and sale of illusory underinsured motorist coverage at the minimum level.

117.   As a further direct and proximate result of the acts complained within the contents of this Complaint, Plaintiff and members of the Class have suffered irreparable harm including, but not limited to, the loss of premiums paid, the denial of underinsured motorist benefits, out of pocket expenses, financial opportunity cost, loss of a chance, the inability to seek reasonable and necessary medical treatment, extended and unnecessary pain and suffering, prolonged mental anguish and emotional distress, and other foreseeable irreparable harms.

118.   Defendant must be compelled to stop their practice of failing to provide underinsured coverage benefits equal to the limits of liability coverage where they have failed to fully inform their insureds throughout the application and policy underwriting process.

### COUNT VII:
### Declaratory Judgment

119.   The Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

120.   An actual controversy exists between the parties thereby rendering declaratory relief proper pursuant to NMSA 1978, § 44-6-1 et seq., FRCP 57 and 28 U.S.C. 2201, the Federal Declaratory Judgment Act.

121.   The Plaintiff and the Class are entitled to a declaratory judgment establishing the respective rights and obligations of the parties with respect to the claims set forth herein.

### COUNT VIII:

**Punitive Damages**

122.    The Plaintiff incorporates by reference the preceding paragraphs as though they were stated fully herein.

123.    Defendant' conduct in failing to provide their insureds with underinsured policy benefits in an amount sold and solicited was willful, wanton, and in reckless disregard of Plaintiff's rights and the rights of the Class.

**WHEREFORE**, the Plaintiff on her own and on behalf of the Class prays for judgment, injunctive, and declaratory relief against Defendant as follows:

a.  Certifying this action as a class action pursuant to Rule l-023(A) & (B) NMRA;

b.  Awarding compensatory damages to the Plaintiff and the Class for the damages done to them by Defendant in an amount to be proven at trial;

c.  Awarding punitive damages to the Plaintiff and the Class in an amount sufficient to punish Defendant for their willful and wanton conduct, and to deter them, and others similarly situated, from such conduct in the future in an amount to be proven at trial;

d.  Awarding the Plaintiff and the Class damages from Defendant as a result of its violations of UIPA, in an amount to be determined at trial and for attorneys' fees and costs;

e.  Awarding treble damages in accordance with the UPA which will deter Defendant and others from such unfair trade practices and wrongful conduct in the future and will punish them or the conduct set forth in this Complaint;

f.  Granting a declaratory judgment that establishes the rights and obligations of the

parties with respect to the claims set forth herein;

g. Granting injunctive relief as may be deemed proper by the Court to require Defendant to desist in the wrongful actions described herein;

h. Awarding the Plaintiff and the Class their costs and expenses incurred in these actions, including reasonable attorneys' fees, experts' fees, and costs; and

i. Granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff Dana Schwartz hereby request trial by jury on all issues so triable.

Respectfully submitted,

DOMINGUEZ LAW FIRM, LLC

By:  */s/ Paul M. Dominguez*
　　　Paul M. Dominguez
*Attorneys for Plaintiff*
PO Box 10865
Albuquerque, NM  87184
PH:  505-850-5854
FAX:  505-796-5107

Submitted: October 29, 2018