# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

DANA SCHWARTZ, *on behalf of*
*herself and all others similarly situated,*

        Plaintiff,

     vs.                               1:18-cv-00328-KWR-SCY

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint, filed November 5, 2021 **(Doc. 67).** Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's Motion to Dismiss is not well-taken and, therefore, is **DENIED.**

## BACKGROUND

This class action arises out of a dispute over "underinsured motorist coverage." NMSA § 66-5-301 ("'underinsured motorist' means an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage."). Plaintiff alleges that Defendant misrepresented or failed to adequately explain to her and similarly situated class members the extent of "underinsured motorist" coverage when purchased at the minimum level of $25,000.

Plaintiff was the victim of a car crash on December 11, 2012.  While Plaintiff was stopped at a red light on Academy Blvd. in Albuquerque, New Mexico, the tortfeasor attempted to slip between her and another stopped car, crashing into both.  She received $25,000 in compensation from the tortfeasor's minimum liability policy. Because she alleges her damages were in excess of $25,000, she apparently sought benefits from her own uninsured and underinsured motorist coverage from her insurance company, Defendant State Farm.  Her policy with Defendant included minimum limit uninsured and underinsured motorist coverage ($25,000).  Defendant allegedly denied coverage according to the insurance policy and New Mexico law, because the amount received from tortfeasor's minimum liability insurance was offset against Plaintiff's $25,000 uninsured and underinsured policy.  *See generally Schmick v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 216, 704 P.2d 1092 (N.M. 1985) (explaining statutory offset in NMSA § 66-5-301). Defendant State Farm claims to have paid under the underinsured motorist provisions for property damage, but Plaintiff alleged that Defendant denied underinsured motorist coverage for bodily harm.

Plaintiff generally alleges that Defendant misrepresented the nature of underinsured motorist coverage she purchased, causing her to reasonably expect that the purchased coverage would compensate her for damages that were greater than the limits of the tortfeasor's liability limits. Plaintiff claims that Defendant did not inform her of the limited nature of underinsured motorist coverage when purchased at the minimum level. Plaintiff's complaint asserted the following claims:

| | |
|---|---|
| Count I: | Negligence; |
| Count II: | Violations of the Unfair Trade Practices Act (N.M.S.A.1978, Section 57-12-2); |
| Count III: | Violations of the Unfair Insurance Practices Act (N.M.S.A.1978, §§ 59A–16–1 *et seq.)* ("UIPA"); |
| Count IV: | Breach of Contract and Claim for Motorist Coverage; |

2

Count V:       Breach of Contract and Covenant of Good Faith and Fair Dealing;
Count VI:      Injunctive Relief;
Count VII:     Declaratory Judgment; and
Count VIII:    Punitive Damages.

The Court denied in part and granted in part Defendant's first motion to dismiss. *See* **Doc. 31.** The Court concluded that "[t]he majority of Plaintiff's claims (Counts I, II, and portions of III) state a plausible claim for relief. However, the Court will dismiss Counts IV, V, and VI, because Plaintiff only pled a bare, formulaic recitation of the elements of the claims, with leave to amend. Moreover, the Court dismisses several claims under Count III (NMSA § 59A-16-20(B)-(D)) with leave to amend, and dismisses with prejudice the claim pursuant to § 59A-16-20(E)." **Doc. 31 at 22.**

Judge Johnson found that "Plaintiff is not objecting to the offset provision, but to [Defendant's] misrepresentations or failure to disclose that the coverage at the minimum level was generally worthless." **Doc. 31 at 10.** "The policy does not spell out that the underinsured motorist provision is effectively non-existent, under circumstances where both the tortfeasor and the insured have minimum liability limits." **Doc. 31 at 12.**

Although the Court dismissed portions of Count III, IV, V, and VI, it gave leave to amend to fix the deficiencies identified in the opinion. **Doc. 31 at 22.**

Plaintiff filed a second amended complaint, repleading her claims except for NMSA § 59A-16-20(B)-(D)) under Count III.

In *Crutcher v. Liberty Mut. Ins. Co., et al.*, Case No.: 18-cv-00412-JCH-LF (D.N.M.), United States District Judge Judith C. Herrera certified the following questions to the New Mexico Supreme Court:

Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a

3

minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher*, 2019 WL 12661166, at *4. This matter was stayed pending the New Mexico Supreme Court's answer.  As explained below, the New Mexico Supreme Court answered this question and Defendant moved to dismiss the claims in this case again.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Conclusory allegations of liability, without supporting factual content, are insufficient.  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Because this is a diversity case based on New Mexico law, this Court must ascertain and apply New Mexico law.  In doing so, the Court must either follow the decisions of the New Mexico Supreme Court, or attempt to predict what the New Mexico Supreme Court would do.  *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

The Court may consider the insurance policy as it is referred to in the complaint, it is central to the Plaintiff's claims and the parties do not dispute its authenticity.  *Jacobsen v. Deseret Book*

*Co.*, 287 F.3d 936, 941 (10th Cir. 2002), *cited in Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). Here, both parties appear to agree that the Court may consider the insurance policy under Fed. R. Civ. P. 12(b)(6). Therefore, the Court may consider the policy and need not convert to Fed. R. Civ. P. 56.

## DISCUSSION

I.     <u>***Crutcher v. Liberty Mut. Ins. Co.*** **does not mandate dismissal of the claims in this case**</u>.

Defendant asserts that the Court should dismiss all claims in this case in light of the New Mexico Supreme Court's decision in *Crutcher*. The Court disagrees and concludes that *Crutcher* generally supports Plaintiff's claims.

In *Crutcher*, United States District Judge Judith Herrera certified, and the New Mexico Supreme Court accepted, the following question:

> Under N.M. Stat. Ann. § 66-5-301, is underinsured motorist coverage on a policy that offers only minimum UM/UIM limits of $25,000 per person/$50,000 per accident illusory for an insured who sustains more than $25,000 in damages caused by a minimally insured tortfeasor because of the offset recognized in *Schmick v. State Farm Mutual Automobile Insurance Company*, and, if so, may insurers charge a premium for that non-accessible underinsured motorist coverage?

*Crutcher v. Liberty Mutual Insurance* Company, 1:18-cv-412, Doc. 53 at 8, Certification Order to the N.M. Supreme Ct. (D.N.M. Jan. 9, 2019) (the "certified question").

The New Mexico Supreme Court answered the question, concluding that (1) underinsured motorist coverage at the minimum limits was illusory in the sense that it was misleading to the average insured, but (2) the future sale of such insurance was lawfully permitted as long as the limitations of minimum limits underinsured motorist coverage were disclosed to insureds in the form of an "exclusion." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33.

In other words, *Crutcher* was consistent with this Court's prior decision in this case that "merely reading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." *Schwartz*, 2018 WL 4148434, at *6. *Crutcher* cited to this language and reasoned that "the average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the statutory minimum amount of UM/UIM insurance, he or she will never receive the benefit of underinsured motorist coverage." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 30.

In order to get around *Crutcher*'s holding, Defendant argues that *Crutcher* applies prospectively, *i.e,* that Plaintiff and those similarly situated cannot assert misrepresentation claims as to minimum limit underinsured motorist coverage. The Court disagrees.

New Mexico applies "a presumption that a new rule adopted by a judicial decision in a civil case will operate retroactively." *Beavers,* 118 N.M. at 398, 881 P.2d at 1383. "The presumption of retroactive application can be overcome by an express declaration, in the case announcing the new rule, that the rule is intended to operate with selective prospectivity or pure prospectivity." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 26, 149 N.M. 162, 170, 245 P.3d 1214, 1222. If the New Mexico Supreme Court does not expressly state whether a new rule is intended to operate prospectively, a lower court may determine whether the presumption of retroactive application is overcome by applying three factors. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 26, 149 N.M. 162, 170, 245 P.3d 1214, 1222.

Defendant asserts that the word "hereafter" is an express statement by the New Mexico Supreme Court that it intended *Crutcher* to apply prospectively.   *Crutcher v. Liberty Mut. Ins.*

*Co.*, 2022-NMSC-001, ¶ 32 ("Therefore, hereafter, the insurer shall bear the burden of disclosure to the policyholder that a purchase of the statutory minimum of UM/UIM insurance may come with the counterintuitive exclusion of UIM insurance if the insured is in an accident with a tortfeasor who carries minimum liability insurance. Consistent with the purpose and intent of the UIM statute, this disclosure will allow purchasers to make a fully informed decision when selecting UM/UIM insurance coverage.").  The Court disagrees, as explained below.

The use of the word "hereafter" must be interpreted in the context of the certified question the New Mexico Supreme Court was answering.  The certified question asked in part whether insurance companies could lawfully charge a premium for underinsured motorist coverage at the minimum limit.  The New Mexico Supreme Court answered that question in the affirmative, as long as "every insurer … adequately disclose[s] the limitations of minimum limits UM/UIM policies in the form of an exclusion in its insurance policy. If the insurer provides adequate disclosure, it may lawfully charge a premium for such coverage." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 33, 2021 WL 4520651.  The New Mexico Supreme Court concluded that it would not prohibit the issuance of minimum limit underinsured motorist coverage as long as an appropriate disclosure was provided.  Read in this context, the New Mexico Supreme Court meant that, "hereafter", minimum limit underinsured motorist coverage could be sold only with proper disclosure. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 2 ("We conclude that this type of policy is illusory in that it may mislead minimum UM/UIM policyholders to believe that they will receive underinsured motorist benefits, when in reality they may never receive such a benefit. We therefore **hold that an insurer must adequately disclose** the limitations of minimum UM/UIM coverage—namely, that under the policies described in this case, a policyholder may never receive underinsurance motorist coverage. **Without this disclosure, an insurer may not**

**charge a premium for minimum underinsurance coverage**.") (emphasis added).  Therefore, the word "hereafter" was used in reference to the disclosure requirements for future minimum limit underinsured motorist coverage and did not concern misrepresentation claims which accrued prior to the issuance of the opinion.

Moreover, Defendant's argument ignores the reasoning of the rest of the *Crutcher* opinion. The New Mexico Supreme Court concluded that the minimum limit underinsured motorist coverage in *Crutcher* was illusory in the sense that it was misleading to the average insured.  The New Mexico Supreme Court further reasoned that the statutory language which authorized the sale of minimum limit underinsured motorist coverage did not provide insurers immunity from misrepresentation claims. *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26 ("[W]e find no merit in Defendant's argument that the language of the statute provides immunity from claims that it misrepresented the coverage available to consumers like Mr. Crutcher. Certainly, while the Legislature authorized the selling of premiums together, its intent was not to sanction the deception of those consumers in their selection of policies and coverage levels.").  The *Crutcher* court also stated that "[w]e refuse to impose on the insured the obligation to be aware of and understand the consequences of New Mexico's UM/UIM statutory provisions, much less the offset rule derived by its technical language." *Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 26.  Defendant appears to believe that the New Mexico Supreme Court gave it immunity from misrepresentation claims as to its minimum limit underinsured motorist coverage. Such immunity would be inconsistent with the New Mexico Supreme Court's reasoning that the sale of minimum level underinsured motorist coverage was misleading to insureds and the statutory language did not provide insurers with immunity.

The Court also does not believe that the singular use of the word "hereafter" rises to the level generally used by the New Mexico Supreme Court in announcing that a rule is prospective. Generally, New Mexico has expressly stated when a case applies prospectively and explained with reasoned analysis why it applies prospectively.  *Rodriguez v. Brand W. Dairy*, 2016-NMSC-029, ¶ 45-51, 378 P.3d 13, 32 (analyzing whether rule should apply prospectively and examining factors); *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 30, 147 N.M. 678, 688–89, 228 P.3d 462, 472–73 (analyzing factors and applying them); *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 29 (same).  The New Mexico Supreme Court did not do so in *Crutcher*.

Moreover, the New Mexico Supreme Court viewed its decision as flowing from its prior decision in *Weed Warrior*.

> This impossibility was identified and highlighted by this Court in *Weed Warrior* where it was determined that, "[i]f the tortfeasor carried the statutory minimum of liability insurance and the injured driver carried the statutory minimum of UM/UIM coverage, the injured driver would have no recourse for injuries suffered over the minimum amount of $25,000." *Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209. Stated differently, there will never be an instance in which there is an "underinsured motorist" if both parties in a car accident are minimally insured because the minimum limits, both being $25,000/$50,000, will always cancel each other out. *See* § 66-5-301(B); *see also Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209. Consequently, "[t]he injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous." *Weed Warrior*, 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209.

*Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 21.  Insurers were aware that minimum limit underinsured motorist coverage was "superfluous", but nevertheless sold such insurance without clearly disclosing its limitations.  Because insurers were already informed back in 2010 of this issue, the Court doubts that the New Mexico Supreme Court meant to give insurers immunity from misrepresentation claims pre-*Crutcher*.

Therefore, the Court finds that the New Mexico Supreme Court did not expressly state that *Crutcher* applies prospectively as to misrepresentation claims.

Defendant appears to argue that the presumption of retroactivity is nevertheless overcome. The New Mexico Supreme Court uses three factors to determine whether the presumption of retroactive application has been overcome. In considering these factors, the Court concludes the presumption of retroactive application has not been overcome as to misrepresentation claims.

Under the first factor, " 'the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.' " *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). Here, the New Mexico Supreme Court clearly considered its *Crutcher* ruling as flowing from, and foreshadowed by, its ruling in *Weed Warrior. Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶ 21 *Weed Warrior,* 2010-NMSC-050, ¶ 10, 149 N.M. 157, 245 P.3d 1209 ("[t]he injured driver, though in theory having purchased UIM coverage, would in fact have purchased only UM coverage—rendering the inclusion of 'UIM' in the statute superfluous."). Insurers were on notice of the issues in this case. Moreover, *Crutcher* expressly held that the plain language of the statute did not provide insurers immunity from misrepresentation claims. *Id.* at ¶ 26. Finally, the New Mexico Supreme Court applied well established misrepresentation law to this case. Therefore, this factor weighs in favor of retroactivity.

Second, the Court must "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). For the same reasons as above, this factor weighs in favor of retroactive application. The *Crutcher* court was clear that although minimum

limit underinsured coverage was statutorily authorized, nothing in the statute authorized insurers to misrepresent the extent of underinsured motorist coverage.

Third, this Court must consider "the inequity imposed by retroactive application, for where a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Marckstadt,* 2010–NMSC–001, ¶ 31, 147 N.M. 678, 228 P.3d 462 (quoting *Beavers,* 118 N.M. at 398, 881 P.2d at 1383). Here, retroactive application is not inequitable to insurers. The New Mexico Supreme Court clearly believed it was inequitable for insureds to believe they purchased coverage when none was actually provided. The New Mexico Supreme Court has previously forced insurers to bear the cost of retroactive rules. For example, it has previously held that "[r]eforming the policies to provide the statutorily authorized coverage will necessarily result in an unplanned cost to insurers who have not secured meaningful rejection and who have not collected appropriate premiums for full coverage. On balance, we deem it more equitable to let the financial detriments be borne by insurers, who were in a better position to ensure meaningful compliance with the law, than to let the burdens fall on non-expert insureds, who are the Legislature's intended beneficiaries." *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 29, 149 N.M. 162, 171, 245 P.3d 1214, 1223.

The Court concludes that the presumption of retroactive application has not been overcome as to the misrepresentation claims. In other word, *Crutcher* does not provide Defendant with immunity for misrepresentation claims which arose pre-*Crutcher*.

II.     **The Court already found that Plaintiff stated a plausible claim as to Counts I, II, and III, and it will not revisit that decision.**

The Court found that Plaintiff stated a plausible claim as to Counts I, II, and portions of Count III[1], and allowed Plaintiff to file an amended complaint to fix deficiencies in other counts. Defendant now argues that the Court should review Counts I-III and dismiss them in light of *Crutcher*. However, *Crutcher* supports the Court's decision not to dismiss Counts I, II, and III. *Crutcher* provided that underinsured motorist coverage was illusory in that it was misleading or misrepresented the extent of coverage to the insured. The New Mexico Supreme Court even quoted this case:

> The average insured driver likely has limited knowledge of insurance law and may not understand the details of the underinsurance law statute, Section 66-5-301(B), and the *Schmick* offset rule, and therefore may not understand that by choosing to purchase only the statutory minimum amount of UM/UIM insurance, he or she will never receive the benefit of underinsured motorist coverage. *See Apodaca*, 2019 WL 231757, at *7 ("[M]erely reading the offset provision in the policy would not inform an insured that the underinsured motorist coverage she purchased at the minimum level would in fact have little to no value." (quoting *Schwartz*, 2018 WL 4148434, at *6))
>
> …
>
> Although not illusory based on the contractual definition, we agree with Mr. Crutcher that minimum UM/UIM coverage is misleading because policyholders are not adequately informed that they are not eligible to receive UIM coverage pursuant to the Mandatory Financial Accountability Act and the corresponding offset rule articulated in *Schmick*. This potential outcome should be explicitly disclosed to policyholders like Mr. Crutcher who are selecting a policy called "Uninsured and Underinsured Motorist Coverage" and expecting to receive insurance benefits under either circumstance. *Romero*, 1990-NMSC-111, ¶ 17, 111 N.M. 154, 803 P.2d 243. In purchasing this insurance, policyholders may believe that they are bargaining for both the risk of being in an accident with (1) an uninsured tortfeasor and (2) an underinsured tortfeasor, while in reality, they are only bargaining for the risk of the former.

---

[1] The Court dismissed certain claims under Count III with leave to amend, and found that Plaintiff stated a plausible claim as to other claims under Count III. Plaintiff declined to replead certain claims under Count III.

*Crutcher v. Liberty Mut. Ins. Co.*, 2022-NMSC-001, ¶¶ 30, 31.  Therefore, *Crutcher* supports the Court's prior decision, and does not provide a basis to reconsider the decision that Plaintiff stated a plausible claim as to Counts I, II, and III.[2]

Defendant argues that the policy provision in *Crutcher* is different from the one in this case.  But the Court already found that Plaintiff pled a plausible claim that the policy in this case was misleading.  The policy in this case contained an offset provision.  The *Crutcher* court found that an average insured would not understand that the offset rule meant they would not receive underinsured motorist coverage.

### III.    Court declines to dismiss Breach of Contract (Count IV) and Good Faith and Fair Dealing (Count V) claims.

Defendant argues that the breach of contract and good faith and fair dealing claims should be dismissed, as Plaintiff failed to fix the deficiencies identified by Judge Johnson.  *See* **doc. 31 at 15-18.**  The Court disagrees and declines to dismiss these claims.

Judge Johnson dismissed the breach of contract and good faith and fair dealing claims with leave to amend, reasoning in part as follows:

> Under New Mexico law, "[t]he elements of a breach-of-contract action are the existence of a contract, breach of the contract, causation, and damages." *Abreu v. N.M. Children, Youth and Families Dep't,* 797 F.Supp.2d 1199, 1247 (D.N.M. 2011), *citing Camino Real Mobile Home Park P'ship v. Wolfe,* 119 N.M. 436, 442, 891 P.2d 1190, 1196 (1995).
>
> Count IV as currently pled does not allege a breach.  Plaintiff has not pointed to any contract term Defendant has breached.   Because of the threadbare pleading, it is unclear how insurer is not complying with the policy, or what term has been breached.  *See Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Without any

---

[2] The Court does not apply the "law of the case" doctrine as requested by Plaintiff, but instead exercises its discretion to decline to reconsider its prior decision.

guidance from Plaintiff, the contract appears to be unambiguous and there does not appear to be a breach.

…

If Plaintiff continues to pursue a breach theory, Plaintiff must identify the particular provision that Defendant is alleged to have violated.

**Doc. 31 at 15-16.**

In her Second Amended Complaint, Plaintiff alleges that she was charged a premium payment for underinsured motorist coverage when no underinsured motorist coverage would be provided. She alleges the policy was ambiguous because it sold underinsured motorist coverage without the obligation to provide a benefit to Plaintiff and members of the class. **Doc. 32 at 20-21.**

The Court agrees that Plaintiff has stated a plausible claim that the contract was ambiguous. Although Defendant purported to sell minimum limit underinsured motorist coverage, the offset provision meant that little to no underinsured motorist coverage would in fact be provided. Plaintiff alleges that Defendant charged a premium for underinsured motorist coverage, despite the fact that the offset provision meant that Defendant would not pay out claims under the underinsured motorist provision. At this procedural stage, the Court accepts these well pled factual allegations as true.

Therefore, the Court declines to dismiss the breach of contract and good faith and fair dealing claims.

### IV.   Injunctive Relief (Count VI).

Defendant argues that the injunctive relief claim is now moot after the *Crutcher* court ordered insurers to disclose the limitations of minimum limit underinsured motorist coverage. The complaint does not allege whether Defendant has complied with that directive. At the Rule 12(b)(6) stage, the Court may not take evidence to determine whether Defendant is in fact remedying the misrepresentations. Therefore, the Court declines to dismiss Plaintiff's request for

14

injunctive relief as moot.  Moreover, Plaintiff has amended her complaint to allege irreparable harm, which fixes the deficiencies identified by the Court.  **Doc. 31 at 20-21.**

V.     **Declaratory Judgment Claim (Count VII).**

Defendant asserts that the Court should dismiss the claim for declaratory judgment because her substantive claims fail and *Crutcher* has mooted her claim for declaratory relief.

The Court has not dismissed any of the substantive claims under the Second Amendment Complaint, and declaratory relief is not moot following *Crutcher*, as Defendant appears to continue to contest the matters in this case.

VI.     **Punitive Damages (Count VIII).**

Defendant requests that the Court dismiss Count VIII, under which Plaintiff requests punitive damages.  In its prior opinion, the Court allowed Plaintiff to seek punitive damages although it recognized that punitive damages are not an independent cause of action.  **Doc. 31 at 20,** *citing President & Fellows of Harvard Coll. v. Elmore*, 222 F. Supp. 3d 1050, 1066 (D.N.M. 2016) (Brack, J.) (allowing independent claim for punitive damages to proceed if it can be tied to another claim). Punitive damages are potentially allowable under multiple claims in this action. Plaintiff has plausibly pled punitive damages, therefore the Court declines to dismiss this claim.

**CONCLUSION**

Plaintiff states plausible claims as to the counts asserted in her Second Amended Complaint.  Therefore, the Court declines to dismiss any claims.

**IT IS THEREFORE ORDERED** that Defendant State Farm's Motion to Dismiss (**Doc. 67**) is hereby **DENIED** for reasons described in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**