**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DANA SCHWARTZ,
*on behalf of herself and all others similarly situated*,

Plaintiff,

v. No. 1:18-cv-00328-KWR-SCY

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, STATE FARM FIRE AND
CASUALTY COMPANY, and
STATE FARM GENERAL INSURANCE COMPANY,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS AND NAMED PLAINTIFF'S INCENTIVE FEE**

**THIS MATTER** comes before the Court on Plaintiff's Motion for Attorneys' Fees and Costs and Named Plaintiff's Incentive Fee (**Doc. 170**). Now that Plaintiff has complied with the notice requirement of Federal Rule of Civil Procedure 23, the Court considers her Motion seeking attorneys' fees and costs, as well as an incentive fee award for Named Plaintiff.

Having reviewed the briefing, exhibits, and relevant law, the Court finds that the Motion is well-taken and, therefore, is **GRANTED**. The Court incorporates herein the order and judgment entered concurrently herewith.

**BACKGROUND**

This Motion for attorneys' fees and costs arises from a class settlement between insureds (Plaintiff and class) against insurers (Defendants). Their dispute involved the sufficiency of Defendants' disclosure of the *Schmick* offset regarding UM/UIM coverage. In her class action, Plaintiff's central argument was that Defendants' UIM coverage at minimum levels had no

meaningful value under *Schmick v. State Farm Mutual Automobile Insurance Co.*, 1985-NMSC-073, 103 N.M. 216, 704 P.2d 1092, and that Defendants failed to properly inform her of the resulting illusory coverage.

In early 2026, the parties reached an agreement to settle the class's claims. *See* **Settlement Agreement, Doc. 161-1**. The Settlement Agreement provides settlement class members with a partial refund of the premiums paid during the class period, up to an aggregate cap of $20,925,000.00. ***Id.* at 14**. Minimum and non-minimum UM/UIM coverage holders will be eligible for 21% and 13% of the total UM/UIM coverage premiums paid during the class period, respectively. ***Id.*** If valid claims exceed the aggregate cap, settlement class members' payments will be subject to a pro rata reduction. ***Id.***

As relevant here, on July 16, 2026, the Court certified the settlement class, approved Plaintiff's motion for final class settlement, and overruled the objection filed by Alain Hielo. **Order Finally Approving Settlement, Doc. 180**. Because Plaintiff had not yet met the notice requirement of Federal Rule of Civil Procedure ("Rule") 23(h), the Court delayed ruling on the Motion until class counsel directed notice to the class in accordance with Rule 23(h)(1). ***Id.* at 29**. Based on the circumstances, the Court required Plaintiff to reopen the objection period and predominantly post the Motion on the settlement website, along with objection information, for at least twenty-one days. ***Id.* at 31**.

On August 18, 2026, Plaintiff notified the Court that class counsel had complied with the order directing notice. **Pl.'s Notice of Compliance, Doc. 182**. After twenty-one days, no objections had been filed. ***Id.* at 3**.

## DISCUSSION

Rule 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under the Settlement Agreement, "[t]he Parties agree that, subject to Court approval, Attorneys' Fees, costs, and expenses, will be paid by State Farm in an amount approved by the Court, but not to exceed $4,250,000." **Settlement Agreement ¶ 12.2**. The amount would be paid separately and in addition to the $20,925,000.00 settlement fund. ***Id.*** The parties also agreed that, subject to the approval of the Court, Defendants "shall pay [Named] Plaintiff a service of incentive award of $25,000." ***Id.* ¶ 12.5**. Fees were only negotiated after the parties had agreed on the substantive terms of the Settlement Agreement. **Mot., Doc. 170 at 7**.

In the Motion, Plaintiff seeks an award of $4,250,000.00 and $25,000.00 for class counsel and Named Plaintiff, respectively. ***Id.***; **Pl.'s Suppl. Mot., Doc. 181**. The Court will address each award request in turn.

### I. <u>The Court will approve Plaintiff's requested attorneys' fees and costs</u>.

Since class counsel seek the full amount allowed under the Settlement Agreement, the requested fee award is 20.31% of the aggregate cap of $20,925,000, or 16.9% of the total economic benefit to the class (once the settlement fund and attorneys' fees caps are combined before calculating the percentage). The Court finds that this request meets the requirements of Rule 23(h) and is reasonable under the circumstances.

#### A. Rule 23(h)(1) notice.

Under Rule 23(h)(1), "[a] claim for an [attorneys' fees] award must be made by motion . . . . Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1); *see also* 3 William B. Rubenstein,

*Newberg & Rubenstein on Class Actions* § 8:22 (6th ed.). According to the Tenth Circuit, "'the motion' refers to 'the motion that class counsel must file to make a claim for fees under Rule 23.'" *Chieftain Royalty Co. v. SM Energy Co.*, 100 F.4th 1147, 1156–57 (10th Cir. 2024) (failing to provide class members with notice of renewed motion for attorneys' fees "contravened" Rule 23(h)). Notice that the motion will be made available is insufficient. *See id.* at 1158 n.15 (collecting cases indicating that fee request itself should be filed prior to objection deadline); *see also* Fed. R. Civ. P. 23 2003 amend. advisory comm. note ("Because members of the class have an interest in the arrangements for payment of class counsel whether that payment comes from the class fund or is made directly by another party, notice is required in all instances.").

Initially, class counsel notified class members and officials via Class Action Fairness Act notices that they intended to seek up to $4,250,000 in the emailed and mailed notices. *See* **Pl.'s Mot. to Approve Settlement 26, Doc. 169-1**. A notification that class counsel will seek "up to" $4,250,000 is different from a notification that class counsel will seek the full $4,250,000. And the initial notice did not provide details as to the time and expenses dedicated to the class action. 5 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 15:13 (6th ed.) ("Knowing the level of the fee alone is a weak substitute for reviewing the full fee petition, as the latter ought to provide more detail about counsel's time and efforts, precisely the detail that would make the opportunity to object meaningful.").

Yet, class counsel did not provide the class with notice of the motion itself before the deadline to object to the settlement. At the hearing, class counsel still believed that the language provided in the long form notice was sufficient under Rule 23(h). In its order, the Court disagreed and required class counsel to give notice of the motion on attorneys' fees and allow for objections before the Court issued a ruling on attorneys' fees and costs.

Considering the totality of the circumstances, the Court ordered Plaintiff to predominantly post the Motion online for at least twenty-one (21) days so that class members may review and object to the motion for attorneys' fees and costs. **Order Finally Approving Settlement 31**. The Court did not require individual notice of the Motion. ***Id.***

On August 18, 2026, Plaintiff notified the Court that she had complied with the order directing notice. **Pl.'s Notice of Compliance**. After twenty-one days, no objection had been filed. ***Id.* at 3**. Notably, Objector Hielo did not object to the specific terms of Plaintiff's Motion, even after the Court indicated—in its order overruling his objection—that he was welcome to make specific objections to the Motion during the reopened objection period. *See* **Order Finally Approving Settlement 31**. Thus, this Motion is unopposed.

Based on the above, the Court finds that the requirements of Rule 23(h) have been met. Now that Plaintiff has complied with Rule 23(h)(1), the Court will proceed to the merits of the Motion.

### B. The Court will apply the percentage-of-the-fund method to determine the reasonability of the requested attorneys' fees and costs.

Plaintiff presents the attorneys' fees issue to the Court as if this is a common-fund class action and analyzes her request for a percentage of the fund under the *Johnson* factors. But here, settlement class counsel will not be paid from the class fund—the parties agreed that counsel will be paid from a separate fund from the class. Accordingly, this is not a common-fund class action. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Home Depot*, 931 F.3d 1065, 1079 (11th Cir. 2019). Nor is this a constructive common fund since the parties negotiated attorneys' fees only after class payment was determined. Accordingly, the constructive common-

fund doctrine also does not apply as attorneys' fees were not considered as part of a "package deal." *See In re Home Depot*, 931 F.3d at 1080–81.

Since settlement class counsel will be paid by Defendants based on the terms agreed to by the parties in the settlement agreement (a contract), this is a contractual fee-shifting case. *See Belanger v. Allstate Fire & Cas. Ins. Co.*, No. CV 19-317 WJ/SCY, 2024 WL 4850334, at *10–11 (D.N.M. Nov. 21, 2024), *report and recommendation adopted*, No. CV 19-317 WJ/SCY, 2024 WL 5056426 (D.N.M. Dec. 10, 2024).

Even though this is not a common-fund case, the Court finds that a percentage-of-the-fund method should be used to calculate attorneys' fees and costs. Although fee-shifting cases typically use the lodestar method, the Court finds that the percent-of-the-fund method is appropriate here. This case is dissimilar to a statutory fee-shifting case, where taxpayers pay the fees. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010). Further, the parties came to an agreement on attorneys' fees after reaching a settlement as to the class, where the parties chose to agree to a maximum amount of fees not based on the lodestar method. Finally, Plaintiffs' attorneys worked on a contingency fee basis, to be paid as a percentage of whatever counsel recovers for their client, with the understanding that they were taking on the risk that they may never receive payment. This is the usual arrangement between plaintiffs and their counsel in class action suits. Thus, the percentage-of-the-fund method is most consistent with the typical contingency fee arrangement between settlement class counsel and their clients. *See id.* at 556 (using the same rationale as to lodestar method). Accordingly, the Court will apply the percentage-of-fund method to determine whether class counsel's requested fee is reasonable.

The percentage-of-the-fund method awards class counsel a share of the benefit achieved for the class. *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d

455, 458 (10th Cir. 2017). District courts consider twelve factors—the *Johnson* factors—in determining the appropriate percentage. *Id.* (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 n.4 (10th Cir. 1994)). Those factors include:

> [1] the time and labor required, [2] the novelty and difficulty of the question presented by the case, [3] the skill requisite to perform the legal service properly, [4] the preclusion of other employment by the attorneys due to acceptance of the case, [5] the customary fee, [6] whether the fee is fixed or contingent, [7] any time limitations imposed by the client or the circumstances, [8] the amount involved and the results obtained, [9] the experience, reputation and ability of the attorneys, [10] the "undesirability" of the case, [11] the nature and length of the professional relationship with the client, and [12] awards in similar cases.

*Id*. (citing *Gottlieb*, 43 F.3d at 482 n.4). This approach "has been called a 'hybrid' approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar." *Id.*

Here, class counsel request the maximum cap of $4,250,000. **Pl.'s Suppl. Mot.** (clarifying that Plaintiff's counsel is seeking the full award amount). Again, this fee award is 20.31% of the aggregate cap of $20,925,000. Assuming that the aggregate cap is reached, when the fee is calculated as a percentage of the total economic benefits to the class (which combines the settlement fund amount with the attorneys' fee request before dividing the fee request amount), counsel seek 16.9% of the "fund." For the reasons discussed below, the Court finds this request is supported by the *Johnson* factors.

**C. The *Johnson* factors support the requested 16.9% fee.**

1. <u>Factor 1</u>.

The time and labor spent in this case supports the requested fee amount. Class counsel have represented Plaintiff since the beginning of her case, which resulting in the filing of this class action more than eight years ago. According to counsels' affidavits, the three attorneys have spent a combined total of approximately 1,228 hours working on the case so far. **Villa Aff. ¶ 6, Doc.**

**160-1**; **Pizzonia Aff. ¶ 10, Doc. 160-1**; **Dominguez Aff. ¶ 4, Doc. 160-1**. During this time, class counsel "filed, defended, and attended motions, obtained important discovery necessary to prove the allegations, attended hearings, hired expert witnesses and prepared for litigation on class certification and trial." **Mot. 9**. Importantly, class counsel worked efficiently and were able to reach a fair and reasonable settlement agreement. Further, counsel have dedicated, and will continue to dedicate, more hours to the case during settlement approval and the claims process.

Moreover, this percentage is supported by the case history. Although the class action was first filed in 2018, it has been stayed multiple times. *See* **Order Finally Approving Settlement 2–3**. Notably, it was stayed from April 2019 until October 2021, and again from April 2023 to November 2024, as the New Mexico Supreme Court considered the certified questions in *Crutcher v. Liberty Mutual Insurance Co.*, 2022-NMSC-001, 501 P.3d 433, and *Smith v. Interinsurance Exchange of the Automobile Club*, 2025-NMSC-004, 563 P.3d 868. For these three years, the parties were not litigating the case. These stays would weigh against class counsel if they were seeking a fee close to or greater than 30%. *See In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 997 F.3d 1077, 1095 (10th Cir. 2021) (citing with approval *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir. 1991), for the proposition that "[t]he majority of common fund fee awards fall between 20% and 30% of the fund"). But here, class counsel seek 16.9% of the total economic benefit to the class. Accordingly, the Court finds that the first factor weighs in favor of class counsel.

2. <u>Factor 2</u>.

The novelty and difficulty of the issues in this case supports the fee award. This case raised novel issues of law, two of which had to be resolved by the New Mexico Supreme Court before litigation could proceed. Although multiple class actions on the same or similar theories have been

filed, this case was the second overall class action filed in this district. There is a heightened risk in cases where there is no roadmap and counsel's acceptance of risk supports an award of a substantial fee. *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ.A. 03–4578, 2005 WL 1213926, at *12 (E.D. Pa. May 19, 2005). This litigation has been difficult and complex, justifying the requested fee.

3. Factors 3 and 9.

Moreover, the skill requisite to perform the legal services properly and the experience and skill of class counsel supports the fee award. Settlement class counsel are highly skilled and specialized. *See* **Pl.'s Mot. to Appoint Interim Counsel, Doc. 105**. This skill and expertise were employed to achieve a result that stands to benefit hundreds of thousands of policyholders. This factor weighs in favor of the requested fee award.

4. Factor 4.

The preclusion of employment in other cases tends to support the requested fee award, though not as much as the other factors. Altogether, Plaintiff's counsel only billed 1,228 hours over eight years. Although there were periods requiring intense dedication, like the negotiations from June to August 2025, the Court does not find that the number of hours would have necessarily precluded counsel from other work, even if the reported hours had reflected the time performing legal research. But again, class counsel only seek 16.9% of the total economic benefit to the class. Accordingly, the Court does not find that this factor weighs against class counsel.

5. Factor 5.

Class actions are typically paid using the percentage-of-fund method as they generally result in a common fund. *See Chieftain Royalty*, 888 F.3d at 458–59. Although the Court has determined that this is a contractual fee-shifting case because the fees are not subtracted from the

fund, a percentage-of-fund method is appropriate here. Accordingly, this factor weighs in favor of the requested fee.

6. <u>Factor 6</u>.

The fee in this case was contingent upon the outcome of the case. For eight years, class counsel risked non-payment for their work and out-of-pocket expenses. This factor is in favor of the requested fee.

7. <u>Factor 7</u>.

This factor does not appear to apply. The time limitations included following federal court scheduling orders and federal rules, and there does not seem to be an occasion where priority work on this case delayed counsel's other legal work.

8. <u>Factor 8</u>.

The significant monetary award and results obtained for the settlement class most strongly support the reasonableness of the fee award. Where "the recovery [is] highly contingent and . . . the efforts of counsel were instrumental in realizing recovery on behalf of the class," the results obtained may be given greater weight. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988); *see also In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1193 (10th Cir. 2023) (noting that results and amount obtained may be weighed more heavily). The Settlement Agreement provides hundreds of thousands of policyholders with the opportunity to recover a percentage of UM/UIM premiums paid from 2010 to 2021, up to a $20,925,000 aggregate cap—the largest aggregate cap agreed to by an insurer sued under a UM/UIM coverage theory thus far. **Mot. 12**. The agreement covers any UM/UIM policyholder over an eleven-year time period. Without this agreement, most individual policyholders would have had little incentive to pursue recovery due to the relatively small monetary amounts involved. Moreover, the settlement goes to

the heart of the dispute, with an eye to the litigation risks and what type of recovery is in the best interest of the class.

In sum, the result obtained for the settlement class avoids future uncertainties and provides a cash recovery. Obtaining this result in the face of significant risks in this class action greatly supports the reasonableness of the fee award.

9. Factor 10.

The undesirability of the case also weighs in favor of the requested fee. Counsel worked this case for many years without payment, and it involves novel and difficult legal issues. Although a number of cases have been filed against insurers on similar theories of liability, this instant action was one of the earlier cases to be filed. Further, Plaintiff claims that, given the unique factual issues in this case compared to other insurers, success was far from certain. Given the significant time and resource commitments, and very significant risk of non-payment, this factor weighs in favor of approving the fee.

10. Factor 11.

The nature and length of the professional relationships factor is generally neutral in class actions. Class counsel have represented Plaintiff for over eight years.

11. Factor 12.

The requested fee is consistent with fees awarded in similar cases. An attorneys' fee award of one-third is within the range of fees awarded in common fund class actions. "Customarily, courts in this District award fees in the range of 30% to 40% of any amount recovered." *Anderson Living Tr. v. Energen Res. Corp.*, No. CV 13-909 WJ/CG, 2021 WL 3076910, at *8 (D.N.M. July 21, 2021); *see also Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 WL 1339305, at *7 n.6 (D.N.M. Apr. 9, 2021). In other UM/UIM cases, courts in this district have

awarded between 20% and 33% of the settlement award. *See Belanger*, 2024 WL 4850334, at *19 (20%); *Bhasker v. Fin. Indem. Co.*, No. 1:17-cv-00260-KWR-JHR, 2023 WL 4534548, at *2 (D.N.M. July 13, 2023) (33.34%).

Thus, for the reasons discussed, the Court finds class counsel's request is supported by the *Johnson* factors.

**D. The Court would approve the requested fee even if a heightened scrutiny standard applied.**

According to Plaintiff, the attorneys' fees and costs award does not trigger heightened scrutiny under *In re Samsung*, 997 F.3d 1077, because parties did not agree to both a "clear sailing" agreement with a "kicker." "A 'clear sailing' agreement is one where the defendant agrees not to object to an award of attorneys' fees specified in a settlement agreement." *Id.* at 1088 (citation modified). Meanwhile, a "kicker" is an agreement that "allows all fees not awarded to class counsel to revert to defendants rather than be added to the *cy pres* fund or otherwise benefit the class." *Id.* (citation modified).

Plaintiff contends that the parties have not crafted a clear sailing agreement because "State Farm has not agreed to refrain from contesting Class Counsel's fee request" in the language of the settlement agreement. **Mot. 6**. And the agreement could not have a kicker because the settlement fund is separate from and unaffected by the attorneys' fees award, and the settlement does not create a *cy pres* fund. ***Id.* at 7**.

The Court generally agrees with Plaintiff. But the clear sailing issue is not as cut and dry as Plaintiff avers since the Motion states that Defendants "have agreed that they will not object to an award of attorneys' fees and reimbursement of expenses of $4,250,000." ***Id.* at 1**. As for the presence of a kicker, attorneys' fees will not be deducted from the settlement fund, and there is no

language stating that the difference between the Court's award and the agreed-upon cap would revert to Defendants. *See Belanger*, 2024 WL 4850334, at *6. But, in the event that the Court granted an award below the agreed-upon maximum, Defendant would have kept the difference, rather than use the excess funds to benefit class members. Nevertheless, the Court is not convinced that this scenario would have qualified as a kicker. Accordingly, the agreement does not trigger heightened scrutiny under *In re Samsung* to consider whether there is any "indication of possible implicit conclusion." *See* 997 F.3d at 1090.

Even if heightened scrutiny was triggered, the Court would be satisfied that there is no financial conflict of interest. The negotiations were conducted at arms-length with the assistance of a neutral mediator. *See id.* at 1091. As discussed above, class members will "receive fair and reasonable compensation" considering the factual issues (Defendants' previous payment under UIM coverage) and legal issue (likelihood of success of contract reformation and excess damages). *See id*. Following the Court's *Johnson* analysis, the Court is satisfied that the requested attorneys' fees and costs are reasonable considering the value of the settlement to the class. *See id*. Attorneys' fees and costs were only negotiated after they had agreed on the settlement agreement. *See id*. Finally, there is no indicia of self-dealing by class counsel during the negotiations. Thus, there is no "potential for class counsel and defendants to reach an agreement that prioritizes the award of attorneys' fees and costs at the expense of class compensation and the interests of class members" *See id.* at 1090.

Therefore, considering the totality of the circumstances and all relevant factors, the Court concludes that Plaintiffs' requested attorneys' fees are appropriate and reasonable. The Court approves the award.

## II. <u>The Court will award Named Plaintiff's incentive fee</u>.

Plaintiff requests a class representative incentive fee of $25,000.00 to be paid in addition to the settlement fund. "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." *Chieftain Royalty Co.*, 888 F.3d at 468. Generally, these payments also seek to incentivize individuals to act as representatives on behalf of the class. 5 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 17:2 (6th ed.). Here, the class representative endured eight years of litigation. This case was the second overall class action filed in this district, which carried significant risk at the time. She has been actively engaged since the inception of the case, which began nearly twelve years ago. Her journey began even earlier at her 2012 car crash. During litigation, Named Plaintiff consulted with counsel, was available for both mediations, and passed over a quick settlement of her personal claims. Her incentive award will be paid in addition to the payments made to claimants, so it will not reduce the benefit to other class members. And no class member objected to the incentive award after the class was notified that Named Plaintiff is seeking the full $25,000.00. *See* **Pl.'s Suppl. Mot**.

Further, the fee award is similar to awards granted in comparable cases. *See, e.g.*, *Peck v. Progressive N. Ins. Co.*, No. 1:22-CV-00490-SMD-JFR, 2026 WL 575763, at *5 (D.N.M. Mar. 2, 2026) (granting incentive award up to $20,000 for four years of litigation); *Belanger*, 2024 WL 4850334, at *22 (finding that class representative's involvement in case for five years justified $10,000 award); *Bhasker*, 2023 WL 4534548, at *3 (authorizing service award of $25,000 under similar circumstances). Thus, the Court finds that the incentive fee is appropriate given the circumstances.

## CONCLUSION

For the reasons above, the Court approves Plaintiff's requested award of $4,250,000.00 and $25,000.00 to class counsel and Named Plaintiff, respectively. Class counsel's attorneys' fees and costs award is reasonable and supported by the *Johnson* factors. Named Plaintiff's incentive award is appropriate under the circumstances. This opinion incorporates the parties' proposed order and judgment entered concurrently herewith. Accordingly, the Joint Motion to Offer Additional Terms to the Court's Final Order (**Doc. 183**) is moot.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Attorneys' Fees and Named Plaintiff Incentive Fee Award (**Doc. 170**) is hereby **GRANTED** for reasons described in this Memorandum Opinion and Order. The Joint Motion to Offer Additional Terms to the Court's Final Order (**Doc. 183**) is **DENIED** as moot.

_____/S/____________________________
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE